EDWIN HAFF v. ASENATH HAFF, LORENZO D. HAFF AND ALMON D. JENNEY.

ASENATH HAFF AND LORENZO D. HAFF v. ALMON D. JENNEY.

*Laches.*

Eleven years unexcused delay in filing a bill to set aside a deed or mortgage is such laches, even among near kinsmen, as will defeat the bill if meanwhile important evidence has been lost by it.

Appeal from Macomb. (Stevens, J.) June 13.—Sept. 23.

BILL to set aside deeds and clear title. CROSS-BILL to set aside mortgage. Almon D. Jenney appeals. Reversed.

*A. L. Canfield* and *Baldwin & Draper* for complainant.

*James B. Eldredge* for defendant.

COOLEY, C. J. The purpose of the original bill in this cause was to set aside as void a deed of forty acres of land in Sterling, Macomb county, made by complainant and his wife to defendant Jenney, in November, 1849; and also another deed of the same lands, given by defendant Jenney to Asenath Haff and Lorenzo D. Haff in February, 1868, and a mortgage of the same date given by the grantees to Jenney for the sum of fourteen hundred dollars, and to restrain Jenney from further proceeding with a foreclosure of the mortgage. The leading facts in the case are the following :

Asenath Haff is the wife of complainant, and Lorenzo D. Haff his son. Defendant Jenney is his brother-in-law, having married his sister. Mrs. Haff and Lorenzo by their answer to the original bill admit complainant's equities, and the cross-bill is filed by them to have the mortgage and the accompanying notes given by them to Jenney set aside. The mortgage in addition to the forty acres covered another parcel of eighty-one acres the legal title to which was in Asenath Haff.

The title to the land in question and also to another eighty acres in the township of Troy, Oakland county, was derived by a deed to complainant from his father Jacob Haff, made in 1845. Jacob, at the time of conveying the lands to him, was considerably indebted to one Page, and it was necessary this indebtedness should be paid off. It is alleged in the bill that in the summer of 1849 complainant became insane. Jenney denies this, and much testimony was taken upon this issue. In November of that year complainant deeded the forty acres in question, and also the eighty acres in Troy, to Jenney—as he says and as his testimony tends to show—without consideration and only because of the disordered condition of his mind. Jenney sold the Troy eighty to obtain the means of paying off the Page debt, and the proceeds were made use of for that purpose by consent of all concerned. Jenney claims that the conveyance to him of the forty acres was upon full consideration, and that the arrangement was made at the solicitation of complainant's wife and parents.

In 1866 complainant removed from the lot in controversy a barn he had built upon it, and Jenney brought suit at law against him for doing so. Complainant thereupon filed a bill in equity to set aside his deed of this lot to Jenney and to restrain the action at law, alleging that the deed was made when he was incompetent. Issue was joined in the chancery suit and some testimony taken, when in 1868 complainant's wife and his son Lorenzo, without the knowledge of complainant, went to Jenney and made an arrangement whereby the lot in question was deeded to them, and they gave back the mortgage of fourteen hundred dollars, now in controversy. This it was agreed was to be in settlement of the litigation. Mrs. Haff claims that she was not aware at the time that the mortgage covered her own lands, and says she did not agree that it should, and both she and Lorenzo insist that the arrangement was brought about by the arts of Jenney and was fraudulent. Complainant says that the whole transaction was a fraud upon him. Though ignorant of it at the time, he seems to have become aware of the facts in a short time, and

called upon his wife for the deed, and received it from her. Jenney took a decree of dismissal of the chancery suit in 1869. Early in 1880 he began foreclosure of the mortgage under the power of sale, and the original bill in this case was then filed.

Upon this statement of the facts the objection which most naturally is suggested to the relief prayed is the long delay in making complaint. Twelve years had elapsed from the time the transaction complained of took place before the bill was filed to set it aside, and eleven years from the time decree was entered dismissing the former suit, which was based on the same alleged equities. Meantime, as is shown by the record, a number of persons who must have had knowledge of important facts have been taken away by death, and the presentation of facts in evidence must necessarily be defective. The delay is not explained, and not excused. It is not pretended that Edwin Haff has been continuously of unsound mind, or that the wife and son who gave the mortgage have at any time been under disability. It is suggested in one of the briefs for complainant that the relationship of the parties sufficiently accounts for the delay, or at least may tend to excuse it. No doubt the relationship is a fact to be considered, and it might well be accepted as an excuse for some delay, not only because of the natural repugnance to making a charge of fraud against a near relative, but also because it might with some reason be hoped that such a fraud would on reflection be abandoned and the fruits of it not claimed. But the delay in this case has been quite beyond what can be excused on any such grounds as these. Jenney, so far as we are informed, has never failed to claim the benefits of the arrangement made in 1868, and the parties now complaining have, for a period longer than that prescribed by statute for barring suit upon any personal demand, abstained from making any effective protest. One could never feel a safe reliance in his conveyances if after such a lapse of time they could be suffered to be attacked on a stale claim of fraud. The suggestion in the brief that the complainant rather than the defendant has been injured by the

54 MICH—33

delay through the death of witnesses, is a begging of the question. We cannot know this: we can only know that there has been delay until of necessity the facts have become obscure or the proof of them lost; but whether this would tend to the prejudice of one party rather than the other is matter of conjecture merely. It is sufficient to justify a denial of relief that the moving party is responsible for the delay.

The cases of *Campau v. Van Dyke* 15 Mich. 371, and *Compo v. Jackson Iron Co.* 50 Mich. 578, and other cases cited therein, p. 595, are decisive against this bill, and also against the cross-bill.

The decrees must be reversed and both bills dismissed.

The other Justices concurred.