HENRY M. DUFFIELD v. THE E. T. BARNUM WIRE & IRON WORKS.

[See 59 Mich. 272.]

*Stock subscription—Rescission of contract for fraud—Estoppel— Rights of creditors.*

1. The judgment below being affirmed by an equal division of the Court, nothing is decided.
2. CHAMPLIN, J., filed an affirmative opinion, concurred in by MORSE, J., holding:

   *a*—A person who buys stock of a corporation, attends stockholders' meetings, votes to increase the capital stock, votes

and receives dividends, and does nothing to repudiate or rescind the contract for six months, is estopped, by his conduct and laches, from rescinding his contract of subscription, and recovering back the money paid, on the ground of fraud on the part of the corporation in securing it, after the corporation has become insolvent, as against creditors of such corporation who have become such after he became a subscriber and before such attempted rescission. In such a case, if a verdict is directed for defendant on the grounds above stated, the fraud charged will be deemed to have been established by the appellate court.

*b*—The rule that fraud vitiates all contracts, at the option of the person defrauded, applies as well to stock subscriptions in a corporation as to other contracts. *Vreeland v. New Jersey Stone Co.*, 29 N. J. Eq. 188. Relief can be had either at law or in equity, but will not be granted where the subscriber has been guilty of negligence in informing himself of the actual facts, or where, in consequence of his delay in repudiating the contract, innocent third parties, either shareholders or creditors, have acquired rights which would be prejudiced by its rescission. Thomp. Liab. Stockh. § 142. The rule is the same whether the subscriber repudiates his contract, and sues to recover the money paid, as in this case, or is sued for his unpaid subscription, and defends on the ground of fraud. *Ogilvie v. Knox Ins. Co.*, 22 How. 380; *Upton v. Tribilcock*, 91 U. S. 45; *Chubb v. Upton*, 95 Id. 667.

*c*—The rule requiring a party defrauded to proceed with diligence to ascertain the truth or falsehood of the representations charged as fraudulent in order to entitle him to a rescission of the contract is well established in the courts both of this country and England. *Dickinson v. Seaver*, 44 Mich. 624, 630, 631; *Haff v. Jenney*, 54 Id. 511. But such want of diligence alone will not have this effect if the rights of third parties have not intervened. *Dayton v. Monroe*, 47 Mich. 193.

*d*—The action for money had and received is an equitable one, and any facts and circumstances may be given in evidence which show that in equity and good conscience the plaintiff ought not to recover.

3. CAMPBELL, C. J., filed an opinion, concurred in by SHERWOOD, J., favoring a reversal of the judgment below, and holding:

*a*—The case of fraud charged by plaintiff is sufficiently made out by the testimony.

*b*—Legal fraud exists when a person has been misled to his injury by false statements of fact, on which he was induced to

rely and act, whether those who led him into the arrangement knew of the falsehood or not.

c—It is not questionable that, where such a fraud has been committed by a corporation (as claimed by plaintiff), the stock purchased may be repudiated, and suit brought for the consideration, or case brought for damages. Upon this there is no conflict; and unless, by reason of subsequent waiver, the party injured has lost his action, he can recover.

d—There is no ground in reason, and very little, if any, in authority, which makes mere delay much longer than that charged to plaintiff fatal to an action, if the fraud is not discovered. Neither is there any ground for holding a person to have lost his remedy by acting, until such discovery, in the same way as any other stockholder.

e—A stockholder should not culpably shut his eyes when informed of essential facts; but he is not culpable or negligent unless he omits to discover what he ought to have discovered, and the law requires nothing which is unreasonable.

f—A stockholder who is not an officer cannot usually have means or be expected to acquaint himself with the internal affairs of the company. He usually has a right to place reliance on the statements and representations of those in charge of the business, and required by their official obligations to examine into it, and keep the shareholders properly informed of the condition of affairs.

g—There is no foundation in reason or in law for holding that plaintiff is debarred of complaint because others have also been subsequently defrauded. A creditor who becomes such by fraud in obtaining his money for one purpose has as distinct an equity as those who were afterwards defrauded or persuaded into giving credit for goods or supplies.

h—The English winding-up process is discussed in connection with the facts in this case.

Error to superior court of Detroit. (Chipman, J.) Argued October 14 and 15, 1886. Decided January 20, 1887.

Assumpsit. Plaintiff brings error. Affirmed by an equal division of the Court. The facts are stated in the opinions.

*Henry M. Duffield,* in *pro. per.* (*Isaac Marston,* of counsel), for appellant.

*Hoyt Post* and *Moore & Canfield,* for defendant.

CHAMPLIN, J.    This suit was commenced by attachment The declaration filed is upon the common counts in assumpsit, and the plaintiff claims to recover back money paid for stock in defendant corporation, under the count for money had and received, on the ground that it was obtained from him by the fraud and false and fraudulent representations of the defendant.

Under an order of the court obtained on motion of defendant, he filed a bill of particulars of the fraud charged in obtaining the money, as follows:

"The specific fraud charged in obtaining said money is this:    That it was obtained under color of a sale to the plaintiff, by the defendant, of 200 shares of the capital stock of the defendant (not theretofore issued to any stockholder, but by the action of the company then remaining in the treasury of said company to be sold in behalf of the defendant by the directors for cash), upon the representations made to the plaintiff by the defendant, to induce said sale, that the capital stock of the company, of which said 200 shares were a part, was intrinsically of par value, and of a greater value than the par or face value thereof; that the value of the cash and other assets of the defendant over and above the amount of its liabilities was much greater than the amount of all its capital stock issued and unissued; that said defendant had made larger profits in each of the years 1882 and 1883; that in said year 1882 it had paid to its stockholders large dividends out of said profits, and had transferred out of said profits large amounts, over and above said dividends, to its surplus account; and that, from the business of the year 1883 (in the business of which year it was stated that said 200 shares of stock were to participate), then just closing, other large profits had been made, and that large amounts were on hand, and out of them would be paid to its stockholders large amounts of dividends, and other large sums would be kept remaining which could and would be transferred to its surplus account; that it had a large surplus in its treasury; that

it had a large surplus in its assets over and above its existing liabilities, and its dividends for 1882, and the dividends able to be made for 1883.

"That all and each of said representations, statements, and pretenses were false and fraudulent, and each and every one of them was a material inducement to the plaintiff in paying in to the defendant said sum of money for said 200 shares of stock, and each and every one of which said statements, representations, and pretenses said plaintiff in good faith believed; and that said sum of money was so as aforesaid paid by said plaintiff to said defendant on the faith and belief of said plaintiff in the further false and fraudulent representations and pretenses made by the said defendant that it had been doing a profitable business, and that its assets were very materially and much greater than they actually were, and that its liabilities were very materially and much less than they actually were; besides other false and fraudulent and deceptive material statements, representations, and pretenses made by the defendant and believed by the plaintiff. Plaintiff claims interest in said sum so as aforesaid paid by him."

Afterwards the plaintiff filed an amendment to his bill of particulars, setting up that he would prove, under his declaration, that said corporation, and the officers thereof, had no authority to issue the shares of stock thus fraudulently sold to plaintiff; that the same was issued without lawful authority therefor, and was void; and that said officers fraudulently represented to said plaintiff that the same was valid stock of said corporation, which representation said plaintiff, at the time of said purchase, relied upon and believed to be true.

The defendant pleaded the general issue, and gave notice thereunder that, at the time of the commencement of the suit, the defendant corporation was largely indebted, and unable to meet all its liabilities in the ordinary course of business, which indebtedness was contracted and liabilities incurred after plaintiff subscribed for capital stock in the corporation, and while he was a stockholder therein; and being so indebted, on July 28, 1884, made a voluntary assignment for the benefit of its creditors, and afterwards,

on the twelfth day of August, 1884, upon a bill filed by cer-
tain of its creditors against defendant and the assignee and
certain attaching creditors, Abram Stebbins, the assignee,
was, by the order of the circuit court for the county of
Wayne, in chancery, appointed receiver of the assets of
defendant corporation, who duly qualified as such, and
received from the defendant corporation a conveyance of all
its property and effects, and became invested with all the
rights and interests in the property that was conveyed to the
assignee by the assignment, and became charged with the
duty of converting the estate and assets of the corporation
into money, and paying its indebtedness if the assets shall
prove sufficient, otherwise *pro rata*.

The receiver took upon himself the burthen of defending
the action for the benefit of the creditors represented by
him.

The testimony shows that the plaintiff subscribed for 200
shares, of the par value of $25 each, of the capital stock of
defendant corporation, on or about the twenty-fourth of
January, A. D. 1884, and agreed to and did pay therefor $26
a share, and interest from February 1, 1883, with the agree-
ment that he should participate in the dividends and profits
from that date, and he received a certificate of stock for the
200 shares, dated January 25, 1884, signed by the president
and secretary of the corporation.

The plaintiff thereafter, and on March 4, 1884, by his
duly-authorized proxy, attended a meeting of the stockhold-
ers of the corporation, at which certain corporate business
was transacted, and an adjournment had until April 4, 1884,
at which adjourned meeting plaintiff also attended by his
duly-appointed proxy. At this meeting, a dividend of 7 per
cent. was declared, payable June 1, 1884, and passing the
balance of the profits for the year past to surplus account.
It was unanimously resolved that they, the stockholders, fully
concur in and approve of the manner in which the directors

disposed of the profits of the last year's business, and that their action be ratified and approved.

The directors also reported to this meeting that, in view of the increased business of the company, it was expedient to increase the capital stock $100,000, and they recommended that the capital stock be increased from $300,000 to $400,-000. The stockholders thereupon resolved that the capital stock be increased from $300,000 to $400,000, divided into shares of $25 each, and that the board of directors be increased from five to seven; that the president and directors make the necessary certificates thereof, to be signed and recorded in the office of the Secretary of State and the county clerk's office of the county of Wayne. The board of directors was authorized to issue the increased stock when in their judgment the business required it.

After this action, and after the subscription of plaintiff, stock was subscribed, paid for, and issued to nine different persons, aggregating $32,500.

Between the date of plaintiff's subscription and the assignment, new indebtedness and liabilities were incurred to the amount of over $250,000, which constitute the bulk of the indebtedness of the defendant corporation. The plaintiff received the dividend of 7 per cent. upon his stock, which was paid him on the second day of June, 1884. Soon after this rumors were afloat that the corporation was in financial distress. Meetings of the stockholders were called, and plaintiff attended. A committee of three stockholders, of which the plaintiff was one, met to investigate the affairs of the company, and see whether the rumors and gossip about the company's condition were true or not. He went, with another member of the committee, who was an experienced book-keeper, and ascertained that there was not any way of getting out. The result of the investigation was that they were of the opinion that they could not find out anything from the books, without a detailed inventory of the assets of the company.

Mr. Bewick, who was acting as general manager, made an inventory, but before it was fully completed attachments were levied upon the property, aggregating over $70,000, in the main by persons who had subscribed for stock, and who claimed that such subscription was obtained by fraud. Plaintiff knew of these attachments, and of the grounds upon which they were issued, from one to three days before he tendered back his dividend, which he did after being informed of the result of the inventory. He then instituted this suit on the same day that the assignment was executed, but previously thereto.

The court took the case from the jury by directing a verdict for the defendant.

The question raised by the record is whether one who buys stock of a corporation, attends stockholders' meetings, votes to increase the capital stock, votes and receives dividends, and does nothing to repudiate or rescind the contract for six months, is not estopped, by his conduct and laches, from rescinding his contract of subscription on the ground of fraud, after the corporation has become insolvent, as against creditors of such corporation who have become such after he became a subscriber and before the contract is rescinded.

In passing upon this question, it is quite unnecessary to decide or even express any opinion whether the testimony shows that the fraud alleged in plaintiff's bill of particulars was made out upon the trial. I do not myself see how fraud can be made out or inferred from a comparison of inventories made while the corporation was in active operation, and, so far as appears, free from embarrassment, with those after financial disaster had overtaken the corporation. It would seem that the plaintiff ought to be required to show that the inventories upon which the representations to him were based were false and fraudulent, and made for a fraudulent purpose. The question of fraud, not having been submitted to the jury, must, in the disposition of the question now before us, be deemed to have been established.

The rule that fraud vitiates all contracts, at the option of the person defrauded, applies as well to stock subscriptions in a corporation as to other contracts.    *Vreeland v. New Jersey Stone Co.*, 29 N. J. Eq. 188.

Contracts induced by fraud are not void, but voidable, and the injured party has a right to have them abrogated.    Relief can be had either at law or in equity, but will not be granted where the subscriber has been guilty of negligence in informing himself of the actual facts, or where, in consequence of his delay in repudiating the contract, innocent third parties, either shareholders or creditors, have acquired rights which would be prejudiced by its rescission.    Thomp. Liab. Stockh. § 142.    And it makes no difference in what aspect the question is raised,—whether the subscriber who has paid for his stock repudiates the contract on the ground of fraud, and sues to recover it back, or the subscriber is sued for unpaid subscription, and defends on the ground of fraud.    In either case, if the stock subscriber has been negligent in informing himself of the actual facts, or if, in consequence of his apparent relations with the corporation as a stock subscriber, innocent third parties have acquired rights upon the faith of such relation which would be prejudiced by his rescission, he will be held as a subscriber, and will not be allowed, in the one case, to withdraw the capital which he has paid in, or, in the other, to escape payment.    *Ogilvie v. Knox Ins. Co.*, 22 How. 380; *Upton v. Tribilcock*, 91 U. S. 45; *Chubb v. Upton*, 95 Id. 667; *Payson v. Withers*, 5 Biss. 269.

The rule requiring the party defrauded to proceed with diligence to ascertain the truth or falsehood of such representations in order to entitle him to a rescission of the contract is well established in the courts both of this country and England.    *Haff v. Jenney*, 54 Mich. 511; *Dickinson v. Seaver*, 44 Id. 624, 630, 631; *Cunningham v. Edgefield & K. R. R. Co.*, 2 Head (Tenn.), 23; *Upton v. Englehart*, 3 Dill. C. C. 496,

.506; *Farrar v. Walker*, 13 N. B.. R. 82; *Oakes v. Turquand*, L. R. 2 H. L. 325; *Lawrence's Case*, L. R. 2 Ch. App. 412; *Kincaid's Case*, Id. 426; *Wilkinson's Case*, Id. 536; *Peel's Case*, Id. 674, 684.

But want of diligence alone in discovering the fraud, when the rights of third parties have not intervened, will not affect the right to rescind. *Dayton v. Monroe*, 47 Mich. 193.

The action for money had and received is an equitable one, :and any facts and circumstances may be given in defense to the action which show that in equity and good conscience the plaintiff ought not to recover.

The rule, so well established, that one who claims to have been defrauded must be diligent in discovering the fraud, is .applicable here. I do not see from the testimony that any diligence was exercised on the part of the plaintiff to discover whether the statements which he claims were made to induce him to purchase the stock in question were true or not.

As between him and creditors of the corporation whose rights have intervened since he apparently became a member of the corporation, he must be held to have had a knowledge .of the condition of the corporation and its affairs. He was in a position where he could ascertain, and where it was his right and duty to ascertain, its condition before taking action which would affect their rights. He should have investigated the standing of the corporation before voting to increase its .capital stock, and authorizing its sale; for if he was at that time defrauded,—and he then was, if ever,—by his act and participation in the stockholders' meeting he perpetrated a ꞏfraud upon others who subscribed to this increased stock. He .does not invoke the equitable doctrine with clean hands. Some of the debts incurred after he subscribed were for labor, and for such debts the law makes the stockholders individually liable. The assets are not sufficient to pay the .debts in full. This liability he escapes if he prevails in this ꞏaction, and leaves the burden of the labor debts to be borne,

in part at least, by those who took the stock which he voted to issue.

The rule which should control actions of this kind is, I think, correctly stated in Morawetz (1st ed.) on the Law of Private Corporations (section 595).   He says:

" When a person subscribes to the capital stock of a corporation, he must be held to contemplate and intend that the corporation shall incur debts and pledge its capital, including the subscriptions of its members, as security.   Creditors who in good faith trust the corporation upon the faith of this security stand in the position of innocent purchasers for value, to the extent of their equitable lien; and it would be most unjust to permit a stock subscriber to disaffirm his contract, and refuse to pay his share of the capital, after it has thus been pledged, with his knowledge and consent, to innocent third parties.   It has accordingly been settled that, if a corporation is insolvent, a shareholder whose contract of subscription was obtained by the fraud of the company's agents cannot diminish the security of *bona fide* creditors by rescinding his contract to contribute the amount of capital subscribed by him."

The authorities cited in the note, both English and American, support the text.   These decisions are based upon the ground that the rights of creditors have intervened before the contract was repudiated, and the insolvency of the corporation.   To affect the right, there must be both creditors and insolvency or bankruptcy of the corporation before the right to rescind is exercised.   In this case the right to rescind was not asserted or exercised until after plaintiff knew of the insolvency of the corporation, and the rights of creditors, who are represented by the receiver in this case, had intervened. It was then too late.   Their rights are superior to his, because of his conduct and laches.   The following authorities support the views above expressed: *In re Reciprocity Bank*, 22 N. Y. 17; *McHose v. Wheeler*, 45 Penn. St. 32; *Haywood, etc., Co. v. Bryan*, 6 Jones, Law, 82; *Greenville, etc., R. R. Co. v. Coleman*, 5 Rich. Law, 118; *Graff v. Pittsburgh, etc., R. R. Co.*, 31 Penn. St. 489; *Hays v. Pittsburgh, etc., R. R. Co.*,

38 Id. 81; *Dayton, etc., R. R. Co. v. Hatch,* 1 Disn. 84; *Hager v. Cleveland,* 36 Md. 476; *Pott v. Eyton,* 3 C. B. 32; *Hoare's Case,* 2 Johns. & H. 229; *Gouthwaite's Case,* 3 De Gex & S. 258; *Philadelphia, etc., R. R. Co. v. Cowell,* 28 Penn. St. 329; *Hull Flax & Cotton Mill Co. v. Wellesley,* 6 Hurl. & N. 38; *Adler v. Milwaukee Patent Brick Co.,* 13 Wis. 60; *Sanger v. Upton,* 91 U. S. 60.

In the last case it was held that the capital stock of an incorporated company is publicly pledged to those who deal with the corporation for their security, and that creditors have a lien upon it for the payment of their debts; that, when debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands until such demands are satisfied.

I think, under the facts of this case, the judgment of the superior court should be affirmed.

MORSE, J., concurred with CHAMPLIN, J.

CAMPBELL, C. J.  This suit was brought to recover back the money paid for stock of the defendant corporation, on the ground that it was obtained by false representations amounting to legal fraud.   The suit is defended in the interest of the receiver, who occupies the place of an assignee under a general assignment made by the defendant corporation, and therefore represents the insolvent estate.   The court below, upon the trial, ordered a verdict for defendant, upon the ground that he had lost his right of action, if one existed.

The plaintiff's suit was begun by levy of attachment, on the twenty-eighth day of July, 1884, previous to the assignment, which was made the same day.   The purchase was made in January, 1884, from Mr. Barnum, the chief stockholder and officer of the corporation, who sold the stock for the corporation, and did so upon representations of a state of facts which, if correct, would have made it valu-

able. After the purchase, Mr. Duffield acted like any other stockholder, attending meetings in person or by proxy, and in June received a dividend, which he tendered back before repudiating the purchase. The testimony did not tend to show any knowledge by him of the real condition of affairs until the time he renounced his purchase. The directors who had made reports concerning the state of affairs, of a flattering kind, appear to have been deceived themselves in the matter, and probably not to have done intentional wrong.

The case of fraud was sufficiently made out by testimony. It has been settled here as well as elsewhere that legal fraud exists when a person has been misled, to his injury, by false statements of fact, on which he was induced to rely and act, whether those who led him into the arrangement knew of the falsehood or not. Mr. Barnum, who was authorized to bring about the sale, which was acquiesced in by the corporation, represented it in what he did and said, and it was therefore responsi'le for his doings. The testimony bore fully on the representations and their incorrectness, and they were not only material, but so important that no person of good sense would have made the purchase had he known the real condition of affairs. That such false statements, acted on, are in themselves sufficient to make out fraud, notwithstanding a possible innocence of actual fraudulent knowledge to the contrary, see *Converse v. Blumrich,* 14 Mich. 123, and the other Michigan cases following it, cited by counsel.[1]

This doctrine has been applied directly to cases of fraud in obtaining stock subscriptions, in *Smith's Case, In re Reese River Silver Min. Co.,* L. R. 2 Ch. App. 604.

It is not questionable that, where such a fraud has been committed by a corporation, the stock may be repudiated,

---

[1] Isaac Marston, counsel for appellant, cited: *Steinbach v. Hill,* 25 Mich. 78; *Beebe v. Knapp,* 28 Id. 76; *Stone v. Covell,* 29 Id. 364; *Webster v. Bailey,* 31 Id. 36 ; *Match v. Hunt,* 38 Id. 6 ; *Baughman v. Gould,* 45 Id. 482; *Tregent v. Maybee,* 51 Id. 191.

and suit brought for the consideration, or case brought for damages. Upon this there is no conflict; and unless, by reason of subsequent waiver, the party injured has lost his action, he can recover. The court below held, as matter of law, that he had become estopped, and lost his remedy.

There is no ground in reason, and very little, if any, in authority, which makes mere delay much longer than this fatal to an action, if the fraud is not discovered. Neither is there any ground for holding a person to have lost his remedy by acting, until such discovery, in the same way as any other stockholder. That a stockholder should not culpably shut his eyes when informed of essential facts is, of course, true. But he is not culpable or negligent unless he omits to discover what he ought to have discovered; and the law requires nothing which is unreasonable. In the multitude of corporate enterprises, with numerous stockholders, which are found doing business everywhere, a stockholder who is not an officer cannot usually have means or be expected to acquaint himself with the internal affairs of the company. He usually has a right to place reliance on the statements and representations of those who are in charge of the business, and required by their official obligations to examine into it, and keep their shareholders properly informed of the condition of affairs. Unless some peculiar circumstances arise, a stockholder cannot intermeddle with business details, or require information except by the usual methods. The action of the directors in this company was such as was apparently regular and based on their knowledge, and their declaration of a dividend was the strongest assurance of their estimate of its financial profits. There is nothing in the record, that we have discovered, which put the plaintiff in fault for assuming that they had done their duty.

It does not appear to us that the regularity of the issue of this stock is open in this suit. The purchaser had means of knowing what stock he was purchasing, as all steps to in-

crease the capital stock are within reach of any one concerned to find them. And we are not prepared to say that there was any fatal defect in those proceedings.

The question seems to be narrowed to the inquiry whether plaintiff is deprived of his remedy by the subsequent assignment. If there was no fault in not discovering the wrong, and if the suit was brought before any opposing claims had obtained a preference, it cannot be said there was any waiver, and it is difficult to see anything which can be treated as an estoppel.

There is no foundation in reason or in law, so far as we can discover, for holding that he is debarred of complaint because others have also been subsequently defrauded. A creditor who becomes such by fraud in obtaining his money for one purpose has as distinct an equity as those who were afterwards defrauded or persuaded into giving credit for goods or supplies. Under our statutes, stockholders are not personally liable to contribute beyond what will pay up their stock, and creditors cannot enforce any rights, under the assignment, against paid-up stock at all. But the suit of plaintiff is based on the claim that he never was properly to be considered a stockholder by the company; and, under this assignment, if anything had remained unpaid on his shares, it would have been as a balance collectible by the company as his subscription, and not a debt due to creditors themselves as such.

In England the winding-up process is mainly to enforce contribution from shareholders, upon the theory that credit is given them as such. But even there it is very clearly held that the distinction taken between defrauded stockholders who sue before winding-up proceedings, and those who delay until after, does not depend upon any principle of estoppel in favor of creditors acting in faith of their membership, but upon the legal position which they are placed in by the winding-up proceedings, whereby all persons registered as share-

holders become, by operation of law, bound to contribute, because those proceedings themselves fix their *status*.

This is very clearly explained in *Stone v. City & County Bank, Limited,* 3 C. P. Div. 282; and in that same case, where the authorities are reviewed and explained, it was strongly intimated that while, after proceedings begun for winding up, the plaintiffs could not avoid being treated as shareholders, they might have sued in that capacity for the damages incurred by the fraud of the company which induced them to buy stock, and been treated as creditors for the damages.

In *Smith's Case,* before cited, it was expressly decided that creditors had no better claim than defrauded shareholders to sue for redress, and could not be preferred to them under circumstances which did not fix a legal priority. Lord Cairns there remarks:

"It is one of the risks, and it ought to be known that it is one of the risks, which creditors are liable to in dealing with limited companies, that it may turn out that some person whose name has been entered as a shareholder in the list has a right to have his name taken off the list, if he can prove that it has been fraudulently inserted there, and if he comes with promptitude to have the fraud redressed."

In other words, it is considered that, unless personally in the wrong in some way, all creditors stand on an equal footing for redress until, by some process which the law has authorized to have that effect, they are placed on a different footing; and, if this is so, any remedy which is seasonably resorted to must be sustained.

It is the settled law of this State that a creditor who has obtained security by attachment or otherwise before a general assignment cannot be deprived of his preference by that or any other subsequent action of his debtor. If he was defrauded, it is equitable that he should have a remedy; and, if he has not contributed himself to mislead other creditors, there is no legal provision in this State to prevent him from

seeking it in the same way as if no other creditors existed. None of our corporation statutes create any such difference in ordinary cases. How far it is done in the specific cases of personal liability existing in some instances by constitutional or statutory provisions we need not inquire. The present case is no such case, and the assignee, or the receiver, who represents him, only holds the property and rights of the corporation, and not rights which the company itself could not enforce, except, perhaps, where property of the company has been fraudulently transferred. In this respect it varies considerably from the English winding-up acts. But, as the suit here preceded the assignment, it would have been in season even there.

In our opinion, the plaintiff had a plain right to maintain his action, based on the fraud complained of, and the court below erred in holding otherwise.

The judgment should be reversed, and a new trial ordered.

SHERWOOD, J., concurred with CAMPBELL, C. J.