CHARLES G. MATHEWS *et al.*, Appellants, v. W. L. CULBERTSON *et al.*, Appellees.

1. **Revenue Laws:** DEEDS: EVIDENCE. The records of conveyances of real estate, executed at a time when the internal revenue laws required that stamps be attached thereto and canceled, are admissible in evidence without proof that stamps were affixed to the originals, as provided by law, unless it appears that such stamps were omitted with the purpose to defraud.

2. **Tax Titles:** REDEMPTION: LACHES: ESTOPPEL. Where the owner of real estate, knowing that the taxes for which the same had been sold at tax sale were illegal, remained silent as to such fact for nearly twenty years, while the holder of the tax deed under such sale, and his grantees, paid the taxes on said real estate, occupied and improved it, and made no adverse claim to the property, and, by reason of his laches, it has become doubtful whether those claiming under the tax sale can produce the evidence which is necessary to a fair presentation of the case on their part, the right of redemption of such owner, and of those claiming under him with knowledge of the above facts, will be deemed barred in equity, and they will be estopped from asserting any claim to said property adverse to the title based upon such tax sale.

*Appeal from Sioux District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

THURSDAY, OCTOBER 15, 1891.

ACTION in equity to quiet the title to four hundred and sixty acres of land in Sioux county, claimed by the defendants under certain tax deeds. After a hearing on the merits, a decree was rendered in favor of the defendants. The plaintiffs appeal.—*Affirmed.*

*Pitts & Kessey,* for appellants.

*H. E. Long,* for appellees.

ROBINSON, J.—The land in controversy was patented to one Horace M. Peck, in the year 1859. The appellants claim that Peck conveyed the land to one Uriah Upjohn by a deed which was recorded in Sioux county in the year 1863; that Upjohn conveyed it to William H. Stanley by a deed which was recorded in the year 1866; and that Stanley conveyed it to the plaintiff Mathews in the year 1868. In October, 1884, Mathews entered into an agreement with his coplaintiff, G. W. Pitts, to convey to him the land for the consideration of twenty-three hundred dollars, of which three hundred and ninety-five dollars was paid in cash. The agreement provided that Mathews should have no personal claim against Pitts for the unpaid portion of the consideration. The defendants claim that the land was sold on the third day of August, 1868, by the treasurer of Sioux county, for the delinquent taxes of the years 1865 and 1866; that tax deeds were issued therefor to William H. Gurley on the twenty-fourth day of August, 1871, and recorded on the next day; that Gurley executed a conveyance for a portion of the land to Laura Chamberlain in June, 1874, and that in October of the next year she executed a reconveyance for a portion of it to Gurley; that in the year 1878 she and Gurley joined in a conveyance of all the lands in controversy to Josiah L.

Lombard. Lombard took actual possession of it in 1878, and in that and the following year built a house thereon, broke a portion for cultivation, and made other improvements. In May, 1881, he executed a conveyance of the land to the defendant, W. L. Culbertson, and in October of the same year Culbertson executed a conveyance therefor to his codefendant, C. O. Boynton. The latter, in a counterclaim, asks that the title to the premises be quieted in him. The district court found in favor of the defendants, dismissed the petition of the plaintiffs, and decreed the title to be in Boynton as prayed.

I. The appellees contend that the appellants have failed to show that title to the land in controversy ever vested in Mathews. To prove the deeds of Peck to Upjohn, and of Upjohn to Stanley, the plaintiffs introduced copies of the records of Sioux county. The defendants objected to them on the ground that they did not show that the original deeds were stamped as required by the internal revenue laws of the United States. The records do not show that stamps were not attached to the deeds, and canceled; hence, if it be conceded that the revenue laws referred to were applicable to the deeds when recorded, the objection of the appellees is not well taken, for reasons stated in *Collins v. Valleau,* 79 Iowa, 626, 631.

1. REVENUE laws: deeds: evidence.

II. The appellants contended that the tax deeds to Gurley were void for numerous alleged reasons, among which are the following: That no assessments of the land were made for the years 1865 and 1866; that no taxes were levied for either of those years; that there were no officers in Sioux county charged with the duty of assessing property and levying taxes in either of those years; that no delinquent tax, for the year 1865, nor for the year 1866, was entered upon the tax list of

2. TAX titles: redemption: laches: estoppel.

1867; that no notice of the sale was given as required by law; that no valid tax sale could have been held on the third day of August, 1868, for the reason that the tax sale was adjourned·from the first Monday of June to the first Monday of August, 1868, a period of more than two months; that no sale was in fact held on the third day of August, 1868; that the amount paid by Gurley was less than one-third of the amount of the sale, as shown by the certificates; that Sioux county paid Gurley a large sum of money to redeem the land from the sale, on the ground that it was erroneous.

We do not find it necessary to decide the questions thus presented by the appellants, for the reason that the case must be determined on other issues. Mathews took a mortgage on the land about the year 1862, and in the year 1867 he visited Sioux county to learn what he could in regard to it. He was then informed of the taxes on account of which the tax deeds in controversy were issued, and was told by a person who claimed to have held some office in the county that the taxes were illegal. In the spring of the year 1868, the debt secured by the mortgage not having been paid, he took a conveyance of the land in payment. In the year 1875 he again visited Sioux county, and ascertained that Gurley had obtained tax deeds for the land and had paid the taxes. He did nothing, however, but record his deed from Stanley. In the year 1878 he made a third visit to Sioux county, and learned that some breaking had been done on the land. After that time he had considerable correspondence with different persons in that county in regard to the land, and, as he says, was kept sufficiently posted for his purposes. In the year 1884 he entered into the agreement with Pitts heretofore mentioned, and in November, 1887, this action was commenced. When Lombard purchased the land he had no knowledge that Mathews was asserting title to it. The same is true of Culbertson. The tax deeds

under which Gurley claimed were regular on their face, and neither Lombard nor Culbertson had actual knowledge of any fact which should have led them to question the validity of the tax title. They obtained conveyances of the land, and took possession of and improved it in good faith. After Culbertson purchased, he learned of Mathews' claim, and visited him in Missouri; but the knowledge he thus acquired came too late to be of any value to him. Mathews never paid any taxes on the land. With information, as he claims, received in 1867, that the taxes for which the land was sold were illegal, he was silent while others discharged the duty which he says, in effect, was his, of paying the taxes on the land for nearly twenty years. He knew that they were paying the taxes, and he also knew that the land was being occupied and improved by persons claiming the tax title. It is clear that his silence and his apparent acquiescence in the loss of his title, by means of the tax deeds, misled Lombard and Culbertson, and induced them to believe that he was making no claim to the land. They did not know of the alleged defects in the title they purchased. Some of them, we are satisfied, did not in fact exist, and the truth as to others it is now difficult, if not impossible, to ascertain. No assessor's books can now be found for the years 1865 and 1866. The same is true of the record of proceedings of the board of supervisors for the time prior to June, 1866. Persons who were residents of the county in the years 1865 and 1866 testify that they had no knowledge of an assessment of the property in the county for those years, and that, so far as they knew, there was no board of supervisors. Others testify that there was no tax sale within their knowledge in August, 1868.

The evidence shows quite satisfactorily that a record of the proceedings of the board of supervisors has been lost. For several years all the county records

were kept in a very irregular manner. There was no court house nor other public place in which to transact the business of the county. The records were kept and the business was transacted in a room of a private dwelling-house, which was occupied as a living and sleeping apartment by members of the family. There was no safe, case or other proper means of preserving the records. In January, 1872, a large number of unauthorized persons seized the records which were then at Calliope, and carried them, without much care for their preservation, across the country, in stormy and windy weather, some twenty-five miles, to Orange City. A few days later they were returned to the county officers at Calliope. In view of the manner in which the records have been kept and used, it is not strange that some are not to be found; and whether the assessor's books have been lost, or whether they never existed, cannot now be ascertained from the record submitted to us. The testimony of witnesses as to what was done in the county during the years in question, and in regard to the county officers and county records, is not satisfactory. One of those upon whom the appellants chiefly rely is contradicted by evidence he gave in another case, and his testimony is shown not to be reliable. Another, who testifies to material matters, admits that he was frequently away from Calliope, and that official acts might have been done without his knowledge. It is clear that the organization of the county was preserved, and that efforts were made to have the necessary offices filled; also that persons were in fact acting as members of the board of supervisors, as clerk, treasurer and as other officers. There was an attempt made to observe the requirements of the law in selling the land and issuing the deeds in controversy. In what respect, if any, the attempts failed, it is now difficult, if not impossible, to ascertain; and, in the absence of satisfactory proof to

the contrary, we must presume that all things necessary
to the validity of the sale and the tax deeds subse-
quently issued were done. Had Mathews acted with
reasonable diligence to protect his interests, the truth
of the material matters in issue could have been ascer-
tained with reasonable certainty. But the record fails
to show any facts which tend to justify his course. It
is evident that he kept himself informed in regard to
the land and the acts of the tax-title claimants, with
the purpose of asserting title, should it be for his
interest to do so at any time; otherwise to take no
steps to recover the land. He supposed that the tax
titles were defective, but he had reason to believe that
Lombard and Culbertson had no knowledge of the
alleged defects. His silence operated as a fraud upon
them and their grantees. His course cannot be
defended on any equitable ground, and it is contrary to
public policy, which requires of each citizen prompt-
ness in discharging his duties to the government, and
good faith in his conduct which affects the rights of
others. His coplaintiff is not in any sense an innocent
purchaser, and we do not understand him to claim any
right which Mathews could not have asserted had their
agreement not been made. He knew the facts in
regard to the claim of Lombard and Culbertson before
he entered into the agreement, and was careful to pro-
vide that Matthews should have no personal claim
against him for the unpaid portion of the purchase
price. In some respects, this case is like that of *Baird
v. Ellsworth*, 81 Iowa, 629, and much of what was said
in that case is applicable to this.

The appellants insist that their claim is not barred
by the statute of limitations, and, therefore, that the
appellees ought not to succeed. It has been said that
nothing will cause a court of equity to act but con-
science, good faith and reasonable diligence. "When
these are wanting, the court is passive, and does noth-

ing." *Earl of Deloraine v. Browne*, 3 Brown Ch. 640. When, by reason of the laches and delay of the complainant, it has become doubtful whether the other parties can produce the evidence which is necessary to a fair presentation of the case on their part, or when it appears that they have been misled to their disadvantage by such conduct, a court of equity will deal with the remedy as if barred. In such cases, the court acts in obedience to the spirit of the statutes of limitation, and adopts the reasons and principles on which they are founded, rather than their literal requirements. *Lawrence v. Rokes*, 61 Me. 42; *Richards v. Mackall*, 124 U. S. 183; 8 Sup. Ct. Rep. 437; *Sullivan v. Railroad Co.*, 94 U. S. 806; *Badger v. Badger*, 2 Wall. 87; *Haff v. Haff*, 54 Mich. 511; 20 N. W. Rep. 563; *Weiss v. Bethel*, 8 Or. 528; *Phillips v. Rogers*, 12 Metc. (Mass.) 411; *Tuttle v. Willson*, 10 Ohio, 27; *Gibbons v. Hoag*, 95 Ill. 69. See, also, *Withrow v. Walker*, 81 Iowa, 651, and cases therein cited; *Foster v. Bigelow*, 24 Iowa, 380.

We conclude that the appellants have failed to make that showing of merit and diligence which is required to justify the interference of a court of equity in their behalf. Moreover, we think the conduct of Mathews has been such that the appellants must be held estopped to assert any claim against the title of the appellees. Some objection is made to the sufficiency of the proof to show title in the appellees. In view of the conclusion we have reached as to the claim of the appellants, the proof is sufficient to sustain the decree of the district court. The questions determined are controlling, and we do not find it necessary to determine others presented. AFFIRMED.