R. C. HORR, Administrator of the Estate of MARY H. FRENCH, Deceased, Appellant, v. C. B. FRENCH.

**Setting Aside Administrator's Sale: LACHES.** An adult heir was aware that his intestate owned land in the state, part of which was sold by the administrator to pay debts, to a purchaser in good faith, and for adequate consideration, believing that the administrator had authority to sell. The heir acquiesced in the sale for twenty-six years, during which time the purchaser, though not in actual possession, paid the taxes, and, at great expense, defended the title against the claim of a railroad company under a congressional grant. The land, during such time, increased in value from seven hundred and ten to thirty-two thousand dollars. *Held*, that the heir was precluded by laches from attacking the validity of the administrator's sale, on the grounds that, though the sale was confirmed by the court, the application did not describe the land sold, that no order of sale was made, and that no notice was given him.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

MONDAY, OCTOBER 12, 1896.

ORIGINALLY, this was an action at law, brought by the plaintiff's intestate, to recover damages from defendant for fraud and misrepresentation, inducing her to part with an interest in certain lands in Woodbury county. The defendant pleaded certain equitable defenses, which will be hereafter referred to. The cause was transferred to the equity calendar and tried to the court, resulting in a decree dismissing the plaintiff's petition. Mary H. French died during the pendency of the proceedings, and her administrator was substituted as plaintiff. Plaintiff appeals.— *Affirmed.*

*Edwin S. Stason* and *W. P. Briggs* for appellant.

*Carter & Brown* and *J. H. Swan* for appellee.

DEEMER, J.—On the fifth day of January, 1863, one A. Z. French died intestate, seized of the northeast quarter of section 19, township 89, range 47, in Woodbury county, Iowa. Plaintiff's intestate was, and defendant is, an heir of the said A. Z. French; and, as such heir, Mary H. French was entitled to fifteen two hundred-twenty-fourths of the estate of the deceased. February 5, 1863, one J. N. Field was appointed administrator of the estate of A. Z. French.. As such administrator, he filed an inventory, listing all the real and personal property of the deceased, and showing all the debts against the estate.. This list contained the property which we have already described. Shortly after his appointment, the administrator filed an application with the probate court for authority to sell real estate to pay the debts of the estate, and on the fourteenth day of September, 1864, made, executed, and delivered to defendant an administrator's deed of the real estate hereinbefore described. This deed was duly approved and confirmed by the probate court, and on the sixteenth day of September, 1864, was filed for record with the recorder of Woodbury county, Iowa, and was also recorded in the records of the probate court on September 26, 1864. The defendant purchased the property in good faith, and for value, and has ever since claimed to own the same, has paid taxes thereon, has defended the title thereto against adverse claimants in the courts of the state and of the United States, and has exercised such acts of ownership over it as are usual and customary with respect to property which is uninclosed and unoccupied. Subsequently, and about the year 1871, the other property of the deceased, of which there was considerable, lying

in Woodbury and adjoining counties, and which was not sold to pay debts, was partitioned among the heirs of the senior French, each receiving his or her proportionate share thereof. The money received from the sale of the real estate to the defendant was used by the administrator in paying existing claims against the estate he represented. Plaintiff's intestate knew shortly after the sale that certain real estate had been sold to pay the debts of her ancestor. She was also informed as early as the year 1868, if not before, that the defendant had taken some real estate at the appraised value for the purpose of satisfying claims against the French estate. And she was further advised in May, 1888, that there was a defect in the defendant's title, and of what the defect consisted. In the year 1877, an action was commenced in the district court of Woodbury county by the Iowa Falls & Sioux City Railway Company, against the defendant and Field, the administrator, in which the plaintiff therein, as successor of the Dubuque & Sioux City Railway Company asked that its title to the land hitherto described, which it claimed to have derived by virtue of certain congressional land grants, be quieted. The defendant made defense to this action, and was successful both in the courts of this state and in the United States court, to which the case was appealed. During the progress of this litigation, and by reason thereof, or from information received of the plaintiff's intestate, the defendant discovered that his title was defective, and in May of the year 1888, he visited Mary H. French, who then lived in the state of Ohio, and for the sum of one hundred dollars, procured from her a quit-claim deed to the land which is at the bottom of this controversy. He also procured from a sister of plaintiff's intestate, a quit-claim deed to the property for the consideration of two hundred dollars. Appellant predicates his action in this case upon certain alleged

false and fraudulent representations made by defendant to his intestate with respect to the title to the land conveyed, its location and value, made, it is said, as an inducement for the conveyance, upon which she relied, and by which she was misled to her damage in the sum of fifteen thousand dollars. It is claimed that the defendant represented and stated that he was the absolute owner of the land, that he had good title thereto, that she had no interest therein, that the land had been duly sold by order of court, and that it was situated three or four miles from the city of Sioux City, that the value thereof was twenty-five dollars per acre, and that he wanted the deed for the purpose of making it more easy to defend against the suit of the railway company; and that each of said statements was false and untrue. The answer denied the alleged false and fraudulent representation, and further pleaded the validity of the administrator's sale for the payment of debts of the estate of A. Z. French, deceased; an estoppel upon the ground of acceptance by plaintiff of the benefits of the sale; the statute of limitations, and adverse possession; and laches and acquiescence on the part of the plaintiff's intestate. In reply, the plaintiff pleaded that the administrator's sale was void and of no effect, because the administrator had no authority to make the deed, in this: that he presented no petition to the probate court for the sale of the land, gave no notice of an application to sell, and had no authority from court to make disposition of the property. Such, in brief, were the issues and some of the facts on which the case was tried in the lower court, resulting in the judgment from which the appeal is taken.

It is contended by both parties, that the first and primary question in the case is the validity of the administrator's sale. The plaintiff adduced evidence to show that no petition was ever filed by the

administrator which gave the probate court jurisdiction to order the sale of the land; that no notice was given the heirs of an application to sell, and that no order was made by the probate court authorizing a sale. The defendant relies upon the presumption arising from his deed,—which, it appears, is in proper form, and was duly approved by the probate court,—lapse of time, and his affirmative pleas of laches, estoppel, and the statute of limitations. It may properly be observed, in passing, that we will not take the time or space needed to decide all the questions argued by counsel. They are many, varied, and some of them difficult, but are not of controlling importance. Our consideration of the case leads us to the conclusion that it may be disposed of upon one ground, which we think is decisive of the controversy, and we now proceed to a discussion thereof.

The administrator's sale, as we have stated, was had in September of the year 1864. A deed was executed which recited that an application for the sale of the real estate had been made by the administrator, the giving of notice of the hearing thereof, an order of the probate court directing the sale of property for the payment of debts, of date July 4, 1864, and the sale thereof to defendant for the sum of seven hundred and ten dollars. This deed was signed by the administrator, and acknowledged by him, on September 14, 1864. On the fifteenth day of September, 1864, the county judge, under the seal of the court, approved and confirmed the sale and conveyance, and on the next day, the deed was filed for record with the county recorder. Under the statutes then in force, a deed so made and approved was made presumptive evidence of the validity of the sale, and of the regularity of all the proceedings connected therewith. At that time there was no statute expressly requiring that a petition for the sale of real estate by

an administrator should describe the land. There was, however, a provision of law to the effect that the proceedings of all courts of limited and inferior jurisdiction, should, like those of general and superior, be presumed regular, except where otherwise expressly declared. Now, to meet the presumption of regularity arising from the deed and the order of court approving the same, the appellant produced evidence tending to show that while there was an application for the sale of real estate by the administrator, yet it did not describe the land sold; that no order was made for the sale of the land in controversy; and that no notice was given to his intestate of the hearing of an application to sell the property. His evidence to establish these facts is largely negative in character, e. g. he had the clerk of the courts present a package of papers which he (the clerk) said were all that he could find in his office relating to the estate of A. Z. French, deceased, and no application, or petition, or notice describing the land was to be found therein. It was agreed upon the trial, however, that the package had been out of the hands of the proper custodian, and unaccounted for, for some time. Again, he produced a record which appeared to be the only one then in the office of the clerk of the court, in which was to be found any entries of the proceedings of the probate court during the years of 1863 and 1864, and there was nothing therein which seemed to relate to the sale of the land in question. It was agreed upon the trial, however, that certain proceedings which related to the sale of a lot belonging to the deceased were the only record entries to be found in the book before referred to which related to the sale of real estate of the deceased prior to September 14, 1864. The plaintiff also produced evidence from his intestate, to show that no notice of the application to sell was ever

served upon her, but her testimony with reference to the want of substituted service is vague and unsatisfactory. It is fortunate, as we view it, that the law relieves us of the necessity of determining from such a record whether there was a valid sale of the property or not. It is possible, not to say probable, that the proceedings relating to the sale were perfectly regular, and yet the proofs thereof may have been lost in the twenty-six years intervening between the sale and the attack made thereon. And it is quite likely that the evidence of the validity of the sale may have been lost between the years 1864 and 1888, at which last-named date the defects seem to have been discovered. But, however this may be, it clearly appears that plaintiff's intestate knew about the time of her ancestor's death that he died possessed of real estate in Iowa, and that he owned a lot, if not more property, in the city of Sioux City. She knew about the time it was done that certain real estate of the deceased had been sold to pay the debts of A. Z. French. She also knew as early as the year 1868, that defendant had purchased some of the land of the administrator, for the purpose of paying some of the debts. She was active in securing a partition of the lands remaining to the heirs, after the debts were paid; at least, she received her proportion thereof, and has never made any renunciation thereof. She acquiesed in the sale of the land to pay debts, and immediately received the benefits thereof in other lands, which were allotted to her, and never, prior to the submission of this case, did she offer to repay to defendant any part of the money paid by him for the land. And this was done after the testimony was closed, and after her representative had stipulated that she received her proportionate benefit from the sale, and had never paid or offered to pay to defendant any part of the purchase price, or any portion of the taxes

paid by defendant, on the land, or any part of the
expenses incurred by him, in defending his title
against the railway company. It further appears,
without controversy, that the defendant purchased
the land in good faith, believing that the adminis-
trator had power and authority to sell; that he paid
full value therefor; that he has, since his purchase,
paid the taxes on the land, and has, at large expense,
defended the title thereto as against the railway
company. He has never, in fact, had the actual
physical and personal possession of the land,
but has otherwise treated it as his own. At
the time the land was sold at administrator's
sale, it was worth seven hundred and ten dollars, and,
at the time defendant received his quit-claim deed
from plaintiff's intestate, it was worth at least thirty-
two thousand dollars. Plaintiff's intestate was an
adult at the time the land was sold at administrator's
sale. What now are the rights of the parties under
such a state of facts? Concede that the administra-
tor's deed is absolutely void, as claimed by appellant;
should a court of equity give plaintiff the relief prayed?
Grant that the statute of limitations is no bar to
plaintiff's suit, and that defendant has not acquired
title by adverse possession, yet the question remains,
should a court of equity, under the circumstances
recited, in the exercise of its just, reasonable, and impar-
tial powers, take from the defendant that which he
purchased in good faith, and for which he paid full
value, and bestow it, with all the increment added,
upon the plaintiff, for the benefit of the estate of one
who stood idly by for more than twenty-five years,
with the means of knowledge at hand by which she
might, with reasonable diligence, have discovered the
defect in the title, and taken upon herself the burdens
and claims incident to the ownership of real estate?
To state the proposition is to answer it. One of the

cardinal principles of equity jurisprudence is that it
will never interfere in opposition to conscience and
good faith. It will never relieve from the conse-
quences of laches, neglect, or the want of reason-
able diligence. In the case of . *Brown v. Buena
Vista County*, 95 U. S. 157, it is said: "The law of
laches, like the principle of the limitations of actions,
was dictated by experience, and is founded in a salu-
tary policy. The lapse of time carries with it the
memory and life of witnesses, instruments of evi-
dence, and other means of proof. The rule which
gives it the effect prescribed, is necessary to the peace,
repose and welfare of society. The departure from it
would open a field to the evils intended to be
excluded." How applicable is this rule to the facts of
this case. Here the papers of the estate have been out
of proper custody, and much of the time unaccounted
for. The memories of important witnesses have
faded. Presumptions are largely all we have upon
which to act. To destroy and set aside defendant's
title on such a record would be most inequitable and
unjust. Considerations of public policy forbid. It is
a familiar adage that "nothing can call a court of
equity into activity but conscience, good faith and
reasonable diligence. Where these are wanting, the
court is passive, and does nothing. Laches and neg-
lect are always discountenanced, and therefore from
the beginning of this jurisdiction, there was always a
limitation to suits in this court." It is said, how-
ever, that plaintiff's intestate did not know of
the condition of the title until some time in
the year 1888. But this will not do as an excuse
for the delay. Defendant was under no obliga-
tion to advise her of the situation. He did not
himself actually know of the defects, until a long
time after his purchase. If they existed at all, they
were at all times apparent to him who would examine

the records of the court. Defendant, after the division of the lands and partition of the estate, was, in no proper sense, the agent of plaintiff's intestate. Up to that time, it is conceded, as we understand it, that he was her agent for the payment of taxes, and perhaps, some other matters. But his agency ceased when each took title by partition in severalty. And, while there is no direct proof that plaintiff knew, until some time after the death of her ancestor, that he owned real estate in Woodbury county, yet, by the use of the commonest sort of diligence, she might have discovered this fact, within a few weeks, at furthest, from the time she was advised of his death. She admits, that in 1864, she knew that he had some property in Woodbury county, but she claims that she did not know he owned the land in dispute. A little foresight on her part, would have disclosed the situation of all the property. The means of knowledge were open to her, and no fraud, concealment, or other inequitable circumstance, in any manner, hindered her investigation. Conditions have greatly changed since the defendant purchased the property. At that time it was wild land, worth less than five dollars per acre. It is now near to, if not a part of, the city of Sioux City, and was worth in 1888, two hundred dollars per acre. It would be grossly inequitable now to permit appellant to claim a right which, if asserted earlier, would have been sustained. The facts of the case are amply sufficient to warrant the application of the rule of laches, and to give it its fullest effect. See, as sustaining our conclusions: *Withrow v. Walker*, 81 Iowa, 651 (47 N. W. Rep. 893); *Bacon v. Chase*, 83 Iowa, 521 (50 N. W. Rep. 23); *Mathews v. Culbertson*, 83 Iowa, 434; (50 N. W. Rep. 201); *McQuiddy v. Ware*, 20 Wall. 14; *Brown v. Buena Vista County, supra; Hall v. Law*, 102 U. S. 461; *Lequatte v. Drury*, 101 Ill. 77; *Hatcher v.*

*Hall*, 77 Va. 573; *Lucas v. Hart*, 5 Iowa, 421; *Badger v. Badger*, 2 Wall. 87; *Harter v. Twohig*, 15 Sup. Ct. 883.

It is conceded by counsel that, if the question above presented is determined adversely to appellant, it is an end of the case. Such being the situation, we are relieved of a consideration of other matters argued; and it follows that the decree be, and it is, AFFIRMED.