PENN MATCH COMPANY *vs.* HERBERT L. HAPGOOD & another.

Worcester. Oct. 2, 1885. — Feb. 25, 1886. FIELD, C. ALLEN, & GARDNER, JJ., absent.

The declaration in an action by a corporation alleged that certain persons agreed to form a corporation under general laws, if they could obtain certain machinery from the defendant, and to build a factory for the manufacture of certain goods ; that such persons informed the defendant of the premises, and, in the name and for the benefit of the proposed corporation, applied to the defendant, who was a manufacturer of the machinery desired, for such machinery, and informed the defendant that the proposed corporation would proceed with its organization and would build a factory only in case a contract could be made with the defendant for the machinery ; that thereupon the defendant made two contracts in writing, one of which was under seal, to furnish the corporation with the machinery upon certain specified terms ; that afterwards, in anticipation of the defendant's fulfilling his agreement, a factory was built for the corporation ; that said machinery could not be procured otherwise than from the defendant, which he well knew ; that the persons named, in behalf of the proposed corporation, before its organization was completed, were always ready to receive and pay for said machinery, and frequently demanded the same, but the defendant neglected and refused to furnish said machinery or any part thereof ; and that said corporation was now duly organized and existed under the general laws. *Held,* on demurrer, that the declaration alleged a contract made before the plaintiff had a legal existence, and did not show any contract to which the plaintiff was a party ; and that the action could not be maintained.

CONTRACT, in two counts.   The first count was as follows :
" And the plaintiff says that, before the matters hereinafter alleged between it and the defendants occurred, the Penn Match Company, Limited, existed according to the laws of Pennsylvania, in the city of Philadelphia, being a company in the nature of a corporation, with its capital divided into shares, with no personal liability on part of its stockholders further than the amount of the capital stock owned by each, and with the right and power to contract and do business in its associate name, and to bring and defend suits in the same name, and that it carried on business in the manufacture of matches in said Philadelphia

until the burning of its buildings, in January, 1882, its stock being wholly and lawfully owned by William Brown, Francis R. Abbott, and Charles Kee, all of said Philadelphia; that by the articles and by-laws of said company, the same being authorized by law, on the death of a stockholder the business of the company was to be wound up and should not continue; that said company had dealings with the defendants as partners under the firm of Hapgood and Smith; that, before the contracts hereinafter set forth were made, the said William Brown died, and that thereupon, and after the destruction of the buildings aforesaid, the said Abbott and the said Kee and William B. Kempton of said Philadelphia agreed together, as they lawfully might do, to form the plaintiff company, under the same provisions of law and with the same rights, powers, and liabilities as the former company had possessed, if they could obtain improved machinery and wooden splints for making matches from the defendants as copartners, and to build a large factory for such manufacture in said Philadelphia, and thus to take up and continue the business of said former firm.

"And the plaintiff further says, that, with the purpose and to the end aforesaid, the said Abbott, Kee, and Kempton, projectors as aforesaid of the plaintiff company, informed the defendants of each and every the premises, and, in the name of and for the benefit of the projected plaintiff corporation, applied to the defendants, who were manufacturers of such improved machinery and of splints for making matches, to procure such machinery and splints, and made known to the defendants that the projected company would proceed with its organization and would build or cause to be built for it a factory only in case they could contract with the defendants as hereinafter set forth; whereupon the defendants, in January, 1882, agreed with the said Abbott, Kee, and Kempton in the name of the Penn Match Company, Limited, and with the view to the formation of and for the benefit of the plaintiff company, to furnish the plaintiff company one setting machine and one rolling-off machine for making matches on or before April 1, 1882, and also to accept and fill orders from them for the plaintiff for four other setting and one other rolling-off machine, to be furnished as soon as possible after said April 1, and a memorandum in writing of said agreement was executed

by the parties, a copy of which is hereto annexed, and the said Abbott, Kee, and Kempton, in the name of and for the benefit of the Penn Match Company, Limited, afterward ordered the other machines contemplated in said agreement.

" And the plaintiff says that, at great expense to the plaintiff, a factory was thereafter, and in anticipation of the defendants' fulfilling their agreement, built in said Philadelphia and furnished to the plaintiff, and made ready to receive said machinery and to manufacture matches, and that the plaintiff could not procure such machinery elsewhere as the defendants well knew, and the plaintiff and said Abbott, Kee, and Kempton, for and in behalf of the projected plaintiff company, before its organization was completed, always stood ready to perform all the obligations incumbent upon them under said contract, and to receive and pay for said machinery so contracted for, and frequently demanded the same, yet the defendants have wholly neglected and refused, and still neglect and refuse, to perform their agreement, and to furnish said machinery, or any part thereof.

" And the plaintiff says that, pursuant to the projection of the plaintiff company by said Abbott, Kee, and Kempton, so communicated to the defendants as aforesaid, the plaintiff was duly organized and exists under the law of Pennsylvania as such company as aforesaid, and has an actual and full capital, and is, as far as it finds it possible, since the defaults of the defendants, engaged in said manufacture; but that, by the defendants' said breach of and refusal to perform their said agreement, the plaintiff has been greatly interrupted, delayed, postponed, and stopped in its said business, has lost large sums of money and great profits, and has lost the use of said factory, built for its said business, and especially designed therefor, and other great damages has sustained at the hands of the defendants."

The copy of the agreement annexed, signed by the defendants, was as follows: " Athol, Mass., March 1, 1882. We, the undersigned, agree to furnish the Penn Match Co., Limited, of Philadelphia, Pa., one setting and one rolling-off machine at " certain prices named, " on or before April 1, 1882."

The second count was substantially like the first, except that the agreement alleged to have been made by the defendants was under seal, dated March 1, 1882, and purported to be a contract

to furnish to the Penn Match Company, Limited, a certain number of match splints per day, for the term of one year, at certain prices named.

The defendants demurred to the declaration, and assigned the following causes of demurrer: "1. Said counts do not set forth any cause of action substantially according to the statutes relating to pleading. 2. The said counts do not show that the plaintiff existed at the time of the making of said alleged contracts, or at the time they were to be performed, and do not show that the plaintiff was a party to said contracts. 3. The said counts do not show that the said Abbott, Kee, and Kempton had any authority from the plaintiff to make said contract, or to stipulate for the performance of the same on the part of the plaintiff. 4. Said counts do not show that the plaintiff has ever ordered any of the goods and merchandise named in said contracts, or ever offered or been ready to perform its part of the same. 5. The said counts show that there were no sufficient parties to said alleged contracts to render them binding in law. 6. The said counts show that said contracts were wholly without mutuality, and that they are void in law."

The Superior Court sustained the demurrer, and ordered judgment for the defendants; and the plaintiff appealed to this court.

*F. P. Goulding*, for the defendants.

*W. S. B. Hopkins*, for the plaintiff.

· W. ALLEN, J. The plaintiff was not in existence when the writings were made, and cannot maintain the action, unless it became a party to the contracts after its incorporation. There is no ground for the contention of the plaintiff that the declaration shows the existence of the corporation, though unorganized, sufficient to be a party to a contract, as in *Vermont Central Railroad* v. *Clayes*, 21 Vt. 30. All that is alleged is the verbal, conditional agreement of certain individuals to form a corporation under general laws.

The power of a corporation to make contracts can be exercised in accepting and adopting proposed contracts made in its name and behalf before its incorporation. Such a contract must derive its vitality from the meeting of minds when both parties are in existence; until then, it can be nothing more than an offer by one party.

The writings, as between the plaintiff and the defendants, show no more than proposals by the defendants, revocable at any time before acceptance by the plaintiff after its incorporation. The fact that one is under seal is immaterial in this respect. The only consideration shown for the defendants' promises is the acceptance of them by the plaintiff, and the promise to accept and pay for the goods implied in that; and the acceptance must be by some act or assent of both parties which will fix the rights of both, and is as essential to a promise under seal as by parol. The defendants could not be bound until such acceptance by the plaintiff as would give them a right of action against it for a refusal to accept and pay for the goods. There is no allegation of acceptance by the plaintiff after its incorporation. The demand is not stated as an act of acceptance perfecting the contract, but, in connection with the refusal, to show a breach of an existing contract.

The plaintiff contends that it was a consideration of the contract moving from it, that it should perfect its organization, and procure a building and prepare to carry on business; or that the proposals of the defendants were made in view of these acts, and of the expectation that the plaintiff should accept·them when it should be competent to, and should do the other acts, relying on the contracts; and that the plaintiff has done the acts accordingly. A corporation may become bound to fulfil a contract made in its name and behalf in anticipation of its existence, by afterwards accepting the benefits of the contract, as it may acquire a right to enforce such a contract against the other party by his acceptance of performance by the corporation; *Low* v. *Connecticut & Passumpsic Rivers Railroad*, 45 N. H. 370, relied on by the plaintiff, is an instance of the former, and the common liability of subscribers of stock of the latter.

In the case at bar, the formation of the corporation and procuring a building were no part of the contract, or of the consideration of it. There was no agreement to do the acts, and the doing of them was not made by the parties a condition upon which the contract was to arise. The promises or proposals of the defendants, though a motive for doing the acts by the plaintiff, are not alleged to have been inducements offered by the defendants, nor are the acts alleged to have been done at their

request. The defendants are not so connected with the acts to be done by the plaintiff that they would have a right to regard the doing of them as the acceptance of the proposals, so that, without other act of acceptance by the plaintiff, they could have maintained an action against it upon refusal to accept and pay for the goods. See *Dayton, &c. Turnpike* v. *Coy*, 13 Ohio St. 84.

The declaration alleges contracts made before the plaintiff had a legal existence, and does not show any contract to which the plaintiff was a party.          *Judgment for the defendants.*