## NATIONAL BANK OF DAKOTA v. TAYLOR.

1. S., the president and active manager of a bank, sold a number of shares of its capital stock to T. under representations of fact relied upon by T., and afterwards claimed by him to be fraudulent and false. The bank, by its directors, had full and actual knowledge of such representations, and with such knowledge, consented and arranged that T.'s notes given in partial payment for said stock should be made directly to the bank, and take the place of notes held by it against S. and others. *Held,* that, in an action by the bank against T. on such notes, he might make the same defense, founded on such alleged false and fraudulent representations, as he could have made if the notes had been given to S., and the action brought by him.

2. In such purchase of stock, T. had the right to rely solely upon the representations of fact by S., and if S., conscious that T. was so relying, knowingly deceived him, nothing would condone the wrong as between them, or estop T. from asserting it, but his acquiescence in it with knowledge of the facts.

3. A party who thus deliberately deceives another to his prejudice cannot complain that the sufferer has not been vigilant in finding it out.

4. The right of such sufferer to rescind may be qualified by intervening interests of innocent parties; but, so long as the question is between the original parties solely, he may continue to rely upon the representations upon which the contract was made, and by which it was in-

duced, and loses no rights, as against the wrongdoer himself, by failure to diligently discover the fraud.

5.  The fact that, soon after such purpose, T. became, and for a number of months was, the cashier of the bank, would not alone, and as matter of law, make him chargeable with a knowledge of the condition of the bank; and so of the falsity of the representations under which he bought, as against evidence that he was, for a considerable portion of the time, absent from the bank and the city where it was located, and that during all his connection with the bank, he, by direction of S., the president, and the person of whom he bought the stock, was engaged in routine work, and had practicably nothing to do with the bills receivable of the bank.

6.  The fact that, as cashier, he signed statements exhibiting the condition of the bank, would not, in an action on such notes by the bank or by S., estop him from showing, as against them, that such statements, which he believed at the time were true, were in fact false.

7.  The fact that after his discovery of the alleged fraud, and at a meeting at which his resignation, tendered on account of such alleged fraud, was to take effect, he was elected and qualified as a director, and voted his stock, nothing else being shown, would not of itself, as matter of law, work a forfeiture of his right to rescind such contract the next day on account of such fraud.

8.  These several facts and conditions, while they might strongly tend against defendant's right to rescind, did not conclusively, and as matter of law, cut off such right.

9.  Whether any or all of these facts, construed in the light of attending circumstances, and the inferences legitimately deducible therefrom, showed acquiescence with knowledge on the part of defendant, was a question of fact for the jury.

(Syllabus by the Court.   Opinion filed March 3, 1894.)

Appeal from circuit court, Beadle county.   Hon. A. W. CAMPBELL, Judge.

Action on a promissory note.   There was judgment for plaintiff, and defendant appeals.   Reversed.

The facts are stated in the opinion.

*W. A. Lynch, E. H. Aplin* and *R. J. Gamble,* for appellant.

The appellant was not guilty of laches or negligence in the discovery of the fraud; no presumption of negligence can be indulged by reason of the mere lapse of time between the pur-

chase of the bank stock by the appellant and the time of the actual discovery of the fraud. Earl Beechamb v. Winn, L. R. 6, H. L. 223; Tazwell's Exr. v. Saunders' Exr., 13 Gratt 354; Nelson v. Carrington, 4 Va. 332; Petroleum Co. v. Hurd, L. R. 5, U. Can. 221; Nudd v. Powers, 136 Mass. 273; Platt v. Platt, 58 N. Y. 646; Doggars v. Van Dyck, 37 N. J. 130; Wallaston v. Tribe, L. R. Eq. 44. Before a party can be charged with laches or negligence in the assertion of a right, he must have knowledge of the facts constituting such right. Jones v. Lloyd, 117 Ill. 597; Breit v. Yeaton, 101 Ill. 242; Pairo v. Vickery, 37 Md. 467; Bausman v. Kelley, 38 Minn. 197; Napton v. Seaton, 71 Mo. 358; Smith v. Hutchinson, 61 Mo. 83; Platt v. Platt, 58 N. Y. 646; Union Dime Savings Inst. v. Clark, 59 N. Y. 342; McNair v. Ragland, 1 N. C. 533; Sedlak v. Sedlak, 14 Or. 540; Fore v. Foster's Admr., 9 S. E. 497; Massie's Admr. v. Heiskell, 80 Va. 789; Rowe v. Bentley, 29 Va. 759; Bowman v. Patrick, 36 Fed. 138; Petroleum Co. v. Hurd, L. R. 5, P. C. 221; Larzelere v. Starkweather, 38 Mich. 96; Larned v. Foster, 117 Mass. 365; Bowman v. Wathan, 42 U. S. 189; Veazie v. Williams, 3 Story U. S. 611; Veazie v. Williams, 8 How. 134; Doggett v. Emerson, 3 Story, U. S. 700; Smith v. Babcock, 2 Woodb. & M. 246; Martin v. Martin, 35 Ala. 560; Duff v. Duff. 71 Cal, 513; Harris v. McIntyre, 118 Ill. 118 Ill. 275; Nealon v. Henry, 131 Mass. 153; Gilpin v. Smith, 19 Miss. 109; Hammond v. Stanton, 4 R. I. 65. Want of diligence in discovering the fraud will not affect the right to rescind when the rights of third parties have not intervened. Dayton v. Monroe, 47 Mich. 193; Allore v. Jewell, 94 U. S. 506.

A defrauded party does not owe to the party who perpetrated the fraud the duty of diligence in the discovery of the fraud. Baker v. Leveret, 67 N. Y. 304; Brown v. Post, 1 Hun. 303; Woodland v. Hiatt, 58 Cal. 235; Allore v. Jewell, 4 Otto 506, 94 U. S. 560; Baker v. Spencer, 47 N. Y. 562.

Appellant promptly rescinded the contract for the purchase of the stock on discovery of the facts which entitled him to re-

scind. While the right to rescind must be promptly exercised upon the discovery of the fraud, the degree of promptness rests largely upon the circumstances of each case. Sheffield Land, Iron & Coal Co. v. Meil, 6 Ala. 1; Hunt v. Blanton, 89 Ind. 38; Heinman v. Townsend, 2 Me. 558; Learnerd v. Foster, 117 Mass. 365; Evans v. Bacon, 99 Mass. 213; Strong v. Strong, 102 N. Y. 69; Schiffer v. Dietz, 83 N. Y. 300. A party has a right to take time to examine, and it is only after all the facts are within his knowledge, that laches can be imputed to him. Pierce v. Wilson, 34 Ala. 596.

If laches or waiver can be imputed to appellant, these were questions of fact to be found by the jury from all the evidence, and it was an error for the court to direct a verdict. The questions of negligence and waiver are always questions of fact; neither can be testified to, but both are conclusions of facts drawn from other facts. Langhoof, Admr., etc., v. Railroad Co., 19 Wis. 492; Upton v. Triblecock, 1 Otto, 45; Railroad v. Van Sternberg, 17 Mich. 120; Railroad v. Armstrong, 52 Pa. 286; Richmond v. Railroad, 18 Cal. 358; Railroad v. State, 39 Md. 259; Hurlsenkamp v. Railroad, 34 Mo. 45; Railroad v. Foster, 43 Ill. 416; Chapman v. Colby, 47 Mich. 46; Traynor v. Johnson, 1 Tenn. 51; Spaulding v. Hallenback, 54 Barb. 80; Dayton v. Monroe, 47 Mich. 195; Combs v. Smith, 78 Mo. 32; Executrix v. Hatz Executors, 52 Pa. 530; Galting v. Newall, 9 Ind. 577; Halbrook v. Burtt, 22 Pick. 546; Kingsley v. Wallis, 14 Me. 57; Kelsey v. Ross, 6 Blackf. 536; Davis v. Kenega, 51 Ill. 170; Wilder v. Sprague, 50 Me. 355; Henkle v. Smith, 21 Ill. 241; Kipp v. Wiles, 3 N. Y. 587; Bank v. Ezell, 10 Tenn. 386. Magee v. McCormick, 13 Ill. 290; Bank v. Baldenwick, 45 Ill. 376; Hays v. Hays, 10 Rich. 421; Porter v. Patterson, 15 Pa. St. 232; Scott v. Buchanan, 11 Tenn. 474; Brown v. Keoch, 24 Conn. 73; Fox v. Harding, 7 Cush. 516; Bristol v. Tracy, 21 Barb. 237; Thayer v. Wadsworth, 19 Pick. 352; Hill v. Hobart, 4 Shep. 164; Savage Mfg. Co. v. Armstrong, 5 Id. 34; Union Bank of Georgetown v. Magruder, 7 Pet. 287; Fitch v. Woodruff, 29 Conn. 82.

Appellant was not required to assert his rights until he knew what they were, and he rescinded the contract as soon as he became aware of his right to do so. It was a question of fact solely and entirely for the jury to determine when it was that the defendant ascertained his right to rescind, and whether or not he rescinded within a reasonable time after having discovered his rights. Torrence v. Bolton, 8 App. Law Rep. 118; Moxon v. Payne, 8 Ch. App. Law Rep. 881; Porter v. Patterson, 15 Penn. St.

*T. H. Null,* for respondent.

KELLAM, J.   This was an action by respondent upon notes made and given to it by appellant. The defense was: That the notes were given in partial payment of 90 shares of the capital stock of the respondent bank, sold by D. L. Stick, the president and general manager of the bank, to the appellant, Taylor. That such purchase of such stock was induced and accomplished by false and fraudulent representations by said Stick to appellant as to the condition of the bank and its business and assets, and the value of said stock. The representations thus generally referred to, their falsity, and the knowledge thereof by Stick, are set out in detail in the answer. That the notes so given were made to run directly to the bank, by the consent of the directors, and with full knowledge on their part of the representations so made by Stick to appellant, and, further, that, as soon as appellant discovered that such representations were false, he notified said Stick of his rescission of the contract of purchase, and offered to return all that he received under it. The trial resulted in the direction by the court of a verdict for the plaintiff (now respondent). Upon this verdict, judgment was entered. From such judgment, and an order refusing a new trial, defendant has appealed.

As we understand the theory of the trial, and of the position of the parties, it was not, and is not, denied by plaintiff and respondent that, to induce and accomplish this sale of the stock

to appellant, D. L. Stick, the seller, made certain representations to Taylor as to the condition of the bank and the value of the stock, and it is expressly admitted that the bank had full notice of these representations, whatever they were, and of the conditions and understanding between Stick and Taylor under which such stock was so sold, and that the bank took the notes of Taylor with a full knowledge and understanding of all these matters. As a witness, Taylor testified to what these representations were. We shall not notice them particularly, for it probably could not be questioned but that they were material, and, if untrue to Stick's knowledge, fraudulent. Taylor's evidence tended, at least, to show them untrue. It was also in evidence that Stick was the president and active manager of the bank at the time of, and prior to, such sale and representations. It was, then, a question of fact, as distinguished from a question of law, whether such representations were true or false; and, if false, whether they were fraudulent or not. It would seem, then, that the court could not have properly directed a verdict, except upon the theory that, notwithstanding the facts that the representations which induced Taylor to buy were material and were untrue and fraudulent, and that the bank itself had full knowledge of all, other subsequent facts were proved which estopped Taylor from taking advantage of such false representations; and this, we understand from the argument of counsel, was and is the claim of the bank, and was the theory upon which the trial court directed a verdict.

The facts principally relied upon to work such estoppel are these: Soon after the purchase of the stock Taylor was made cashier of the bank, Stick still retaining the presidency. He was cashier from October 1, 1889, until January 13, 1891. During this time he, as such cashier, signed a number of statements required by the national banking act, exhibiting the condition of the bank. That, at the meeting of January 13th, at which his resignation as cashier took effect, he was re-elected

a director, qualified, and at that meeting voted his stock. It having been shown that these notes were made directly to the bank, instead of to Stick, the seller of the stock, with the knowledge and consent of the bank through its officers and directors, and it being expressly admitted that the bank took the notes with a full knowledge of the consideration for which, and the representations under which, they were given, we think it fairly follows that the same rules as to the admissibility of the evidence and its effect will apply and control as would if the notes had been given to Stick, and this action had been brought by him for their collection; so that the controlling question is, do these enumerated facts conclusively, and as matter of law, preclude Taylor from rescinding the contract and interposing the attempted defense? We assume that, upon the evidence, the jury might have found that the inducing representations were material, and that they were false and fraudulent. If they were, when might Taylor have rescinded? A party may rescind a contract procured from him by fraud. Comp. Laws, § 3589. To do so, he must act promptly upon discovery of the facts which entitle him to rescind. Id. § 3591. These sections of the Code are only a restatement of common-law rules. Taylor swears that he told Stick, at the time of the purchase, that he was unacquainted with the patrons and borrowers from the bank; that in buying the stock, he was relying upon his representations. He had a right to do so, and if Stick knowingly deceived him, he was a wrongdoer, and, between those parties, nothing would condone the wrong, or estop Taylor from asserting it, but his acquiescence in it with knowledge of the facts. It would be fundamentally and essentially unjust to allow a positive and moral wrong to grow into a right by mere lapse of time. Nor can the party who thus deliberately does the wrong complain that the sufferer has not been diligent in finding it out. In Brown v. Post, 1 Hun. 304, the court says: "A person deceived by the fraudulent misstatements of another owes him no duty of active vigilance in the discovery of the fact that

they are false." Baker v. Lever, 67 N. Y. 304, was an action to have a bond and mortgage, given to secure the price of property alleged to have been sold under fraudulent misrepresentations, declared void. In its opinion the court says: "The referee has found that the plaintiff who purchased the stock had opportunities to, and might have, with reasonable diligence, ascertained the situation of the company in time to have tendered or offered to return the stock, and while it had a market value; and he was guilty of laches by omitting to do so within that time. This was not enough to show knowledge of the fraud, and not sufficient to bar the right of the plaintiffs to avail themselves of it. It might well be that opportunities to ascertain the fraud would be of no avail to persons unfamiliar with the business transactions of corporations, as was probably the fact here; and the authorities do not hold that a mere want of diligence, without knowledge of the fraud, is sufficient to deprive a party of his legal right to rescind a fraudulent contract." Later, in the same opinion, the court remarks that occasional expressions by courts that recision must be made after the party has had reasonable opportunity to discover the fraud, and that vigilance and care must be exercised, are dicta applicable only to peculiar facts, and do not state the general rule. Bank v. Hiatt, 58 Cal. 234, was an action on a note given for purchase of stock. The defense was that the sale was induced by false and fraudulent representations by the seller. The trial court found that, by reasonable diligence and inquiry defendant might have known that the representations were untrue, and rendered judgment for plaintiff. The supreme court reversed the judgment, saying such finding was quite immaterial and that the seller could not escape responsibility by showing that the defendant might, by effort or diligence, have ascertained that the representations were false.

It would seem strange law that a party may safely accept and rely upon the statements of him with whom he is dealing without investigation, and make and complete the contract

solely upon the strength of his reliance upon their truth, but that, when he has so concluded the contract, he can no longer rely upon the truth of such representations, but that he must then investigate, and see if they are true. He has the same right to rely upon the statements after, as before, the consummation of the contract. Until something came to Taylor's knowledge reasonably calling upon him to suspect and investigate, he might, and naturally would, continue to rely upon the statements as honestly and truthfully made. Stick could not complain that Taylor had failed to exercise a vigilance that he had deliberately allayed. We do not mean by this that Taylor's rights would not be affected by his persistent refusal to look at and investigate facts which, coming to his knowledge, might, or did, excite his suspicion. Such conduct would operate against him, not so much because he failed to discharge a duty to investigate which he owed to Stick, as because it would indicate his satisfaction with, and acquiescence in, the situation without objection or investigation. The right of a party to rescind might be qualified by intervening interests of innocent third parties; but, so long as the question is between the original parties solely, he may continue to rely upon the representations upon which the contract was made, and loses no rights as against the wrongdoer himself, by failure to diligently ascertain the fraud. And so the court in Duffield v. Iron Works, 64 Mich. 302, 31 N. W. 310, says: "Want of diligence alone in discovering the fraud, when the rights of third parties have not intervened, will not affect the right to rescind." It is true that nearly all the time Taylor held the stock prior to his attempt to rescind, he was the cashier of the bank; but that fact, of itself, would not, as a matter of law, make him chargeable with a knowledge of such facts as would demonstrate to him the falsity of Stick's representations. The knowledge properly imputed to him would depend, not upon his nominal, but upon his actual, relations to the bank. He might have been cashier, but in Europe or sick in bed, or performing the duties of a tel-

ler, all the time.   Taylor  testifies  that  when he went into the
bank he was entirely unacquainted with banking business; that
Stick,  who was president, directed him to stand at the counter,
receive deposits, and pay checks, and subsequently pointed out
other duties, which he got into the habit  of  performing  regu-
larly; that Stick made  all  the loans, and had charge of them,
and kept the discount register; and that he (Taylor) had prac-
tically nothing to do with the bills  receivable;  and  that  these
conditions continued through his experience in the bank; and fur-
ther, that, during the time that he  was  cashier, he was absent
from the bank, and  from  Huron, several months.   We think
such facts would tend to qualify the  effect  of  the presumption
of knowledge that might, in  general,  follow  the  fact  that  he
was the bank's cashier.   If so, the  extent of such qualification
should be determined by the jury.

It is also claimed that Taylor  is  bound  by,  and  estopped
from setting up facts inconsistent with, the statements intended
to exhibit the condition  of  the  bank, and  signed  by  him  as
cashier.   These statements are not in the abstract, but we sup-
pose them to be the  ordinary  statements  made  in response to
the call of  the  comptroller.   The purpose of these statements
is to inform the comptroller and other  supervisory  authorities,
and the public generally, of the financial condition of the bank.
The duty of making and issuing  such  statements should be in-
telligently and  conscientiously discharged, and if an official is
called to account for  making  an  untrue  statement, either  by
the  government  criminally,  or  by an injured party civilly,  he
cannot evade responsibility by showing that he made the state-
ment without personal knowledge;  but, as  between  the  bank
itself and its official agent who makes the statement, there can
be no  such  unyielding  rule.   Suppose,  immediately  after  his
installment as cashier, and before  it  could  be  claimed that he
had opportunity  to  inform  himself  as  to  the  condition of the
bank, he had signed such statement.  In a criminal prosecution
he probably could not shield himself  behind  his  inexperience

and want of knowledge; but would the signing of the statement under such circumstances deprive him of the right to show, as against the bank or Stick, that he was deceived and misled by one of them, with the knowledge of the other, and that he had made a statement which, at the time, he believed to be true, but which was in fact untrue?

On the evening of January 13, 1891, when his resignation as cashier took effect, and after he knew of the alleged fraud which had been perpetrated upon him in the sale of the stock, he was re-elected as a director of the bank, and then and there qualified, and at that meeting, but never afterwards, he voted his stock. We think there is nothing about either of these facts of themselves, and with attending circumstances, to conclude his rights, as matter of law. It is affirmatively shown that, after this evening, Taylor did not attend or participate in any meeting, either of directors or stockholders. It does not appear for or against what measures or motions he voted. He may have been there to see that his resignation was finally effective, and simply voted on a motion to adjourn. It is true that Morawetz, in his work on Corporations (Section 208) lays down the broad rule, as cited by respondent, "that a person who was induced by fraud to purchase shares in a corporation cannot avoid his contract if, after having acquired notice of the fraud, he has received any benefit from his shares, or in any manner has acted as a stockholder." But the reason for a rule is the life of the rule, and the reason for such rule is given in the many cases cited by the author to support the text: and it is that a person who, with knowledge of such fraud, continues to act with and hold himself out to others as a part of, such corporation, inviting them to do business with it on the strength of his credit, ought not then to be allowed then to withdraw, to their injury. This is the principle upon which the rule rests, and the learned author just quoted does not mean that a single act of a stockholder or director, without regard to its character, or the reason for, or the circumstances under,

which it is performed, must inexorably work a forfeiture of his right to avoid a sale for fraud. Could not a number of stockholders who had been deceived into subscribing for and taking stock unite in a call as stockholders for a general meeting for the very purpose of returning their stock, without, by such act, defeating any rights they otherwise would have had? The rule is no broader than the principle on which it rests. It does not appear that anybody was, or could have been, misled or injured by Taylor's attendance at this meeting. He immediately took steps to sever his relations with the bank by returning the stock. His so attending the meeting and voting as a stockholder did not, and could not have, affected any innocent person. Assuming, then, that Stick and the bank, which knew all the facts, Taylor was not required to suspect a wrong and investigate, did he act with the required promptness after the discovery? He testifies that his suspicions were first positively aroused by a conversation between D. L. Stick and D. Stick, president and vice-president of the bank, and Maxwell, a stockholder and member of the discount committee. This occurred on Saturday, the 20th day of December, 1890. That he then and there commenced to investigate, and kept it up until the 6th day of January, when he became satisfied that he had been deceived, and so notified Stick, and that he had called a meeting of the directors for that evening, and intended to resign, This is another act to which the rule quoted from Morawetz would not apply, and which we think he might do without affecting his right to avoid the contract. As an officer or director of the bank, he might call a meeting, and attend and participate in it, for the purpose of withdrawing from the organization, without thereby exposing himself to the suggested peril of acting "in any manner" as a stockholder or director of the bank.

Without following this discussion further, we will say that, while the questions are not entirely free from doubt, we believe that in this action, where the parties stand as the original actors, and it not appearing that the interests or rights of inno-

cent third parties are involved, the several acts and omissions of Taylor should be construed in the light of attending circumstances, and that whether he unreasonably and negligently refuse to open his eyes to facts which he ought to have seen, or whether, after discovery, his conduct was such as to indicate his acquiescence in the situation as it was, were questions of fact for the jury; and that neither nor all of the acts proved, construed in connection with the surrounding circumstances, and the inferences which a jury would be at liberty to deduce therefrom, were so definite and conclusive in effect as to eliminate all questions of fact, and lead directly to one unavoidable legal result, and thus justify the court in deciding the case purely as question of law. The judgment is reversed, and the cause remanded for a new trial. All the judges concur.