## CHASE v. REDFIELD CREAMERY CO.

1. Where a corporation accepted the benefit of a promoter's agreement to
   pay plaintiff certain unpaid rent of the corporation's predecessors, if
   permitted to occupy plaintiff's building, and on the corporation's com-
   ing into existence the promoter was elected as president, and the com-
   pany took possession of the building, it was charged with the president's
   knowledge respecting the agreement, and bound thereby.

2. Where plaintiff sued a corporation on an oral agreement to pay certain
   unpaid rent of its predecessors, as part of the consideration of the cor-

poration's occupancy of plaintiff's building, the fact that defendant offered in evidence a paper stipulating that, if defendant occupied the building during a certain year, plaintiff would donate the rent of its predecessors, did not prevent plaintiff from proving the parol contract to assume such rent. since the written stipulation related to an independent matter, and was not the contract sued on.

(Opinion filed February 7, 1900.)

Appeal from circuit court, Spink county. Hon. A. W. CAMPBELL, Judge.

Action by Alonzo Chase against the Redfield Creamery Company for the recovery of rent. Judgment for plaintiff, and defendant appeals. Affirmed.

*C. T. Howard* and *E. J. Cannon*, for appellant.

It was error to admit in evidence testimony of oral agreements varying or tending to vary the terms of the written memorandum. St Louis Ry. Co. v. Dearborn, 60 Fed. 880; Sayre v. Burdict, 47 Minn. 367; Bruns v. Schrieber, 43 Minn. 471; Strunk v. Smith, 66 N. W. Rep. 926, 8 S.D.; 407 Hutchinson v. Cleary, 55 N. W. Rep. 729.

The contract recovered upon was entered into before the incorporation of the appellant, and the corporation is not responsible for the acts nor bound by the contracts of its promoters done or entered into before the incorporation Winter v. Mining Co., 57 Fed. 287; Buffington v. Bardon, 50 N. W. 776; 4 Am. & Eng. Enc. of Law 201; Whitney v. Wyman 101 U. S. 392; Western Screw Mfg. Co. v. Housley 72 Ill. 531; Bartelle v. Cement Co., 32 N. W. 327; Railroad v. Christie, 79 Pa. St. 54; Ins. Co. v. Smith, 65 Ill. 309; Ins Co v. Hart, 31 Md. 59; Railroad v. Perry, 44 Ark. 383.

*H. G. Warnock*, for respondent.

The defendant corporation by accepting the benefits of the contract made before its organization and by availing of and acting under the agreement after its organization adopted and ratified it and was bound by its provisions. Bomner v. Am. Spiral Co., 81 N. Y. 468; Chater v. Sugar Refg. Co., 19 Cal. 220; See also Petrie v. Guelph Lumber Co., 15 Am. & Eng. Corp. Cases 263; Paxton Cattle Co. v Bank, 17 Am. & Eng. Corp. Case 300; Redfield on Railroads p. 18; Grand Forks Lumber Co. v Forestellot 75 N. W. 905.

CORSON, J. This is an action to recover of the defendant for the back rent of premises leased to the Mellette Creamery Company, a corporation, and for rent accruing during the occupancy of the premises by the defendant, a corporation. Verdict and judgment for the back rent were rendered for the plaintiff, and defendant appeals.

Prior to May 1897, a corporation known as the Mellette Creamery Company rented certain premises belonging to the plaintiff, and at about the date mentioned was indebted to the plaintiff for a balance of $110 due on account of such rent. The Mellette Creamery Company being unsuccessful in its business, the Cornish, Curtis & Green Company, a corporation doing business in St. Paul, and holding a mortgage upon the machinery of the Mellette Creamery Company, concluded to organize a new company, which should take the property of the Mellette Creamery Company and continue its business. Thereupon F. D. Culver, an agent of said company, came out to Redfield to ascertain upon what terms the building rented from the plaintiff could be obtained for such new corporation. He had two or more interviews with the plaintiff, in which the

plaintiff consented that the new corporation might continue to occupy his building for the purpose of continuing the said business upon condition that the new corporation should assume and pay the back rent due from the Mellette Creamery Company. There is some conflict in the evidence in regard to this agreement, but as the question of whether or not such agreement was made was submitted to the jury. and found in favor of the plaintiff, we shall assume that such was the agreement. A new corporation was thereupon organized, under the name of the Redfield Creamery Company, of which said Culver was elected president; J. H. Cornish, a member of the Cornish Curtis & Green Company, secretary and treasurer; and Henry Braun, former manager of the Mellette Creamery Company, was made manager. The Redfield Creamery Company took possession and continued to occupy the premises from about May 24th, 1897, the time of its incorporation, to September of that year, when the business, not proving satisfactory, was closed up, and the Cornish, Curtis & Green Company took possession of and removed the machinery from the plaintiffs building. The contract between the plaintiff and Culver was made some two or three days prior to the organization of the Redfield Creamery Company, and the appellant contends that it is not bound by the contract made for it by Culver, as it had no existence at the time such contract was made.

As a general rule, contracts made for or on behalf of a proposed corporation to be thereafter organized, by its promoters, will not be binding upon the corporation; but to this rule there are many exceptions. A corporation may, in its corporate capacity, adopt the contract made for or in its behalf, or it may adopt the contract by accepting the benefits so made

in its behalf.    Mr. Morawetz, in his work on Private Coporations, after laying down the general rule, says:   "A corpoiation may, however, make itself responsible for such acts and contracts by subsequently adopting them."  That learned author further says:   "The adoption of an agreement made by the promoters of a corporation may often be implied from the acts of acquiescence of the corporation or its agents, without any express acceptance.   After a corporation has knowingly received the benefits of an engagement entered into by its promoters, it will usually not be permitted to deny that it agreed to assume the corresponding burdens."   Sections 547-549, Mor. Priv. Corp.    Mr. Thompson. in his Commentaries on the Law of Corporations. says:   "The American doctrine is that the engagements of promoters do not bind the future corporation, unless the corporation expressly or impliedly ratifies them. It may, of course, make them its own by express agreement. *   *   *   So it may. of course, impliedly ratify such engagements, by accepting and retaining any benefits which accrue to it therefrom, in which case it becomes liable, not on the strict theory of contract, but on the principle of estoppel."   1 Thomp. Corp. § 480.    In Match Co. v. Hapgood, 141 Mass. 145 7 N. E. 22, the supreme court of Massachusetts says:   "A corporation may become bound to fulfill a contract made in its name and behalf in anticipation of its existence, by afterwards accepting the benefits of the contract, as it may acquire a right to enforce such a contract against the other party by his acceptance of performance by the corporation."   As we have seen, in the case at bar the Redfield Creamery Company entered into possession of the leased premises, and continued to occupy them several months, under the agreement made by

Culver with the plaintiff, and who, as we have seen, was elect-
ed president of the new corporation. The Redfield Creamery
Company is charged with the knowledge possessed by its
president of the agreement made between him and the plaintiff
for and in behalf of that corporation. It cannot be said there-
fore, that this corporation retained possession of the leased
premises without a knowledge of all the facts connected with
the agreement between the plaintiff and Culver. Huron P. & B.
Co. v. Kittleson, 4 S. D. 520, 57 N. W. 233; Bank v. Taylor, 5
S. D. 99, 58 N. W. 297.

On the trial the defendant offered in evidence a paper
which it claims was the written agreement entered into between
Culver and the plaintiff, and embodied all their previous ne-
gotiations regarding the leasing of the premises. This
memorandum reads as follows: "In consideration that the
creamery now operated on premises leased by me to the Mel-
lette Creamery Company is continued in operation for the sea-
son of 1897 and 1898 by said company or its successors, I agree
to donate as a bonus to said company all rents past due and un-
paid under the lease of said premises, but said past-due rent
shall not be donated unless said creamery is operated during
the term aforesaid. I further consent that said company may
sublet said leased premises to its successors. [Signed] Alonzo
Chase." It will be observed that by the terms of this memor-
andum the plaintiff stipulates that in case the creamery is con-
tinued in operation during the season of 1897 and 1898 by the
Mellette Creamery Company or its successors, he agrees to
donate as a bonus the past-due rents, and consents that said
company may sublet said leased premises to its successors.
Neither the Mellette Creamery Company nor its successors

continued in operation during the time therein stipulated. In our opinion, this memorandum or stipulation on the part of the plaintiff does not embody, or purport to embody, the contract or agreement entered into between Culver and the plaintiff. It refers to an entirely separate, distinct, and independent matter; and the contention of counsel for the appellant that parol evidence was inadmissible to prove the terms of the contract between Culver and the plaintiff is untenable.

There were other questions discussed by counsel for the appellant, but, in the view we take of the case, it is not necessary to further consider them in this opinion. The judgment and order denying a new trial are affirmed.