T. Y. MICKEL, Appellant, v. JOHN WALRAVEN, MARY WALRAVEN, WILLIAM F. WALRAVEN and H. J. WALRAVEN.

Fraudulent Conveyance: DISCOVERY OF FRAUD. A deed taken in a wife's name is alleged to be fraudulent as to the husband's creditors. At the time it was recorded the creditor had not reduced his claim to judgment, and he did not obtain judgment until eighteen years later. *Held*, in the absence of special circumstances, the recording of the deed discovered the fraud involved in it, within the meaning of Code, 2530,—That while no right to set the deed aside accrued when the fraud was discovered, because no judgment was then obtained, it was such laches, in the absence *of* excuse, as would defeat an action to subject, that no judgment was gotten for eighteen years thereafter. Ordinarily, such judgment should be obtained within five years after the discovery of the fraud, in analogy to the statute of limitations.

Profits. Where a conveyance may not be set aside because of plaintiff's laches, he can not subject lands bought with the profits of the first conveyance.

*Appeal from Clinton District Court.*—HON. P. B. WOLFE, Judge.

FRIDAY, OCTOBER 26, 1894.

SUIT by creditors' bill to set aside certain conveyances of real and personal property, alleged to be in fraud of creditors. Decree dismissing plaintiff's petition, and he appeals.—*Affirmed.*

*J. Stine* for appellant.

*W. A. Cotton* for appellees.

DEEMER, J.—I. John Walraven and Mary C. Walraven are husband and wife; the other defendants are their sons. In the year 1873, and for some years prior thereto, they lived together as one family, in

Clinton county,. Iowa. In the early seventies defendant John Walraven failed in business, and among his creditors was the plaintiff. Plaintiff obtained judgment against John Walraven on his claim, in the district court of Clinton county on the fifteenth day of September, 1891. He procured an execution to issue on this judgment, which was returned "No property found," before the commencement of this suit. In his petition, plaintiff alleged that on the first of January, 1891, John Walraven was the owner of some land in Clinton county, but that before plaintiff obtained his judgment, and before the commencement of this suit, said defendant caused the land to be conveyed to his wife, Mary C. Walraven, for the purpose of hindering, delaying, and defrauding his creditors. He further alleged that at the same time John Walraven was the owner of forty head of horses, which he conveyed to his son H. J. Walraven with like intent; and that he was also the owner of seventy-five head of cattle, which he conveyed to his son William F. Walraven for the same purpose. Plaintiff further averred that about December 10, 1891, defendant John Walraven conveyed to his wife twenty head of horses, and that his wife, pretending to be the owner thereof, caused her son William F. to remove all the said horses to Calhoun county, where they now remain. He also alleged that about .March 5, 1892, John Walraven purchased some land in Calhoun county. Iowa, and caused the same to be conveyed, by warranty deed, to his wife, Mary C. Walraven, and on or about March 7, 1892, she conveyed the same to her son William F. Walraven, who now holds the same; that at the same time he purchased another tract of land in Calhoun county, and caused the same to be conveyed to William F. Walraven, who now holds the same; that about October 27, 1892, he purchased some town lots in the village of Wheatland, in Clinton county, and

caused the same to be conveyed to his wife, who now holds the same; and that on December 3, 1892, he purchased another lot of town lots in the same place, and caused them to be deeded to his wife, who still holds the title; that some time in January, 1893, defendant William F. Walraven conveyed some of the Calhoun county land deeded to him to his brother Parker C. Walraven, who is also made a party defendant to this suit. He further alleged that each and all of these conveyances of real and personal property were without consideration, fraudulent, and void, and made with intent to hinder, delay, and defraud the creditors of John Walraven; and he asks to have these conveyances set aside, and the lands and personal property decreed to be the property of John Walraven, and be held subject to his (plaintiff's) judgment. The answer of each of the defendants is in effect a general denial of the allegations of the petition. They further allege that as the conveyances of the Clinton county land were made more than five years prior to the institution of this suit, the action is barred by the statute of limitations. On the issues thus joined the court rendered a decree dismissing the plaintiff's petition, and he appeals. The testimony in the case with reference to the Clinton county land, which is furnished largely by the defendants themselves, rests almost wholly in the memory of witnesses as to transactions occurring nearly, if not quite, twenty years ago. It is not, therefore, very clear or satisfactory. From a careful reading of it, we are led to believe that the following are the material facts in the case: At the time John Walraven failed in business his wife was possessed of some personal property and some town lots which she claimed in her own right. With this, or the proceeds of it, she made a partial payment on two hundred and forty acres of the Clinton county land in controversy, which she, or rather her husband, pur-

chased for her of one Graham in the year 1873. The deed to the land was recorded in July of that year. Afterward, and in the year 1882, she claims to have purchased two hundred acres more land, adjoining that purchased of Graham, from the Iowa Land Company; and during the years 1873 to 1884, inclusive, she claims to have purchased other small tracts of land adjoining the Graham tract, until now she has in her own name, in Clinton county, more than six hundred acres of land, lying in one body. Her husband, John Walraven, had a power of attorney from her, executed in June, 1873, authorizing him to lease real estate for her use, and to lease real estate belonging to her to other parties.

About the time of the purchase of the Graham land, there was leased in her name about one thousand acres of land adjoining the Graham tract which, with it, was used for pasturage purposes. At different times during the years 1870 to 1875, inclusive, she borrowed of her son, P. C. Walraven, money earned by him as deputy postmaster at Wheatland, where these parties lived. The amount so borrowed was agreed upon between them in November, 1886, to be three thousand, five hundred and eighty-six dollars and twenty-five cents, and Mrs. Walraven gave her son, P. C., her note for that amount. Defendant, Mary C. Walraven, claims that she paid the purchase price for all this land, and made the improvements thereon, with the money borrowed from her son as before stated, and the earnings and profits arising from the use of the land. It is shown that during all this time her husband was managing the land, and that he conducted nearly all the negotiations resulting in the purchase of it. Defendants claim that in so doing he was acting as the agent of Mary C. Walraven, receiving just such amounts as she chose to pay, which he used for his support and to pay debts he had contracted before his

failure; that Mary C. Walraven in fact purchased all the land, and is the absolute owner thereof. While, on the other hand, plaintiff insists that these transactions were all fictitious and fraudulent; that the title to the land was taken in the name of Mary C. Walraven pursuant to a conspiracy between herself and husband to defraud his creditors; that these conveyances were a scheme and devise to aid John Walraven in covering up his earnings, and keeping them from his creditors, and that the whole transaction was colorable and covinous.

In the view we take of the case, it is not necessary to determine which of these contentions is correct.

The first of these conveyances was made in 1873, and the last in 1884. Nearly all of the land was obtained prior to 1882,—in fact all of it but twenty acres,—and the deeds for it were recorded practically as soon as made. This action was commenced on December 3, 1891, more than ten years after the deeds to most of the land had been executed and recorded. Plaintiff's judgment was obtained September 5, 1891, but the debt on which the judgment was rendered was created prior to 1873. The exact time, however, is not shown, but it was prior to the time any of the conveyances in question were executed. Now, our statutes of limitation provide that actions "for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect," shall be brought within five years after their causes accrue, and not afterward, except when otherwise specially declared. Code, section 2529. Code, section 2530: "In actions for relief on the ground of fraud and of mistake  *  *  *  the cause of action shall not be deemed to have accrued, until the fraud or mistake shall have been discovered by the party aggrieved." This case was one heretofore solely cognizable in a court of chancery, and, therefore, comes

within the provisions of the statute before quoted; and it is claimed that the action is barred within five years after the discovery of the alleged fraud. It has frequently been held by this court that the record of a deed is notice to the world of its contents, and that, where a deed which is fraudulent as against creditors is spread upon the public records, notice to the world is given of its character, or at least sufficient information is conveyed thereby, in the absence of special circumstances, to put creditors upon inquiry as to its contents and character. *Gebhard v. Sattler*, 40 Iowa, 152; *Bishop v. Knowles*, 53 Iowa, 268, 5 N. W. Rep. 139; *Garden v. Cole*, 21 Iowa, 205; *Hawley v. Page*, 77 Iowa, 239, 42 N. W. Rep. 193; *Laird v. Kilbourne*, 70 Iowa, 83, 30 N. W. Rep. 9; *Francis v. Wallace*, 77 Iowa, 373, 42 N. W. Rep. 323. Following these cases, we must hold that plaintiff discovered the fraud in these conveyances at the time they were recorded. At the time of the discovery of the fraud, however, plaintiff's right of action had not accrued. Before he could institute his action to subject the land to the payment of his claim, he must have had a lien upon it either by attachment or judgment. *Clark v. Raymond*, 84 Iowa, 251, 50 N. W. Rep. 1068; *Faivre v. Gillman*, 84 Iowa, 573, 51 N. W. Rep. 46; *Gwyer v. Figgins*, 37 Iowa, 517; *Gordon v. Worthley*, 48 Iowa, 429; *Pearson v. Maxfield*, 51 Iowa, 76, 50 N. W. Rep. 77; *Miller v. Dayton*, 47 Iowa, 312; *Taylor v. Branscombe*, 74 Iowa, 534, 38 N. W Rep. 400.

As plaintiff's cause of action did not accrue until he obtained his judgment on September 15, 1891, the statute did not begin to run until that time, although he had knowledge of the fraud, which he complains was perpetrated nearly eighteen years before; and as he commenced this suit within a few months after he recovered his judgment, the action, strictly speaking, is not barred. This is the holding in other states under

similar statutes. *Gates v. Andrews*, 37 N. Y. 657; *Compton v. Perry*, 23 Tex. 414; *Eyre v. Beebe*, 28 How. Pr. 333; *Reynolds v. Lansford*, 16 Tex. 286; Bump, Fraud. Conv. [2 Ed.] p. 547; *Wilson v. Buchanan*, 7 Gratt. 334, and authorities cited. The effect of section 2530 of the Code, which we have quoted, is not to cause the action to accrue when the fraud is discovered whether the right of action is perfect or not, but to prevent the running of the statute as against a perfect right of action until the fraud is discovered.

While, as we have said, the action is not, strictly speaking, barred by the statute, yet there must be some limitation to the right of putting the claim in judgment. A party will not be allowed to postpone the running of the statute indefinitely. One must not be allowed to sleep over his rights, to the prejudice of the party of whom he makes a claim, and who, by the delay, may be deprived of the evidence and the means of effectually defending himself. The claim must be reduced to judgment within a reasonable time, otherwise it will be considered stale, and no relief will be granted. What is this reasonable time can not be settled by any precise rule. It must depend upon circumstances. If no cause for delay can be shown, it would seem reasonable to require the judgment to be obtained within the time limited by the statute for bringing the action. In accordance with this rule it has frequently been held that where a demand or some other act is required of a plaintiff as a condition precedent to his right to sue, the demand must be made in a reasonable time, and this time, unless there be some special circumstances shown, will be fixed in analogy to the statute of limitations. *Codman v. Rogers*, 10 Pick. 112; *Palmer v. Palmer*, 36 Mich. 487; *Railway Co. v. Byers*, 32 Pa. St. 22; *Wenman v. Ins. Co.*, 13 Wend. 268; *Picquet v. Curtis*, 1 Sumn. 478, Fed. Cas. No. 11131; *Raymond v. Simonson*, 4 Blackf. 77; *Holmes v. Kerri-*

*son*, 2 Taunt. 323; *Stanton v. Stanton*, 37 Vt. 411; *Kraft v. Thomas*, 123 Ind. 513, 24 N. E. Rep. 346; *Keithler v. Foster*, 22 Ohio St. 27; *Morrison v. Mullin*, 34 Pa. St. 12; *Phillips v. Rogers*, 12 Metc. (Mass.) 405; *McDowell v. Bank*, 20 Ala. 312. This doctrine is the accepted rule in this state (*Ball v. R'y Co.*, 62 Iowa, 751, 16 N. W. Rep. 592; *Reizenstein v. Marquardt*, 75 Iowa, 294, 39 N. W. Rep. 506), and is not in conflict with *Bank v. Greene*, 64 Iowa, 445, 17 N. W. Rep. 86, 20 N. W. Rep. 754, for it is expressly decided in that case that failing to obtain a judgment against a corporation before proceeding against the stockholders was simply a failure to prepare for trial and procure evidence; that the cause of action accrued and the statute began to run upon the happening of certain statutory conditions, without reference to whether plaintiff had judgment or not, and that the judgment was merely evidence. "It has been said that nothing will cause a court of equity to act but conscience, good faith, and diligence. 'When these are wanting, the court is passive, and does nothing.' *Earl of Deloraine v. Bourne*, 3 Brown, Ch. 640. When, by reason of the laches and delay of the complainant, it has become doubtful whether the other parties can produce the evidence which is necessary to a fair presentation of the case on their part, or when it appears that they have been misled to their disadvantage by such conduct, a court of equity will deal with the remedy as barred. In such cases the court acts in obedience to the spirit of the statute of limitations, and adopts the reasons and principles on which they are founded, rather than their literal requirements." *Mathews v. Culbertson*, 83 Iowa, 434, 50 N. W. Rep. 201, and authorities there cited. "A court of equity applies the rule of laches according to its own ideas of right and justice. Every case is governed chiefly by its own circumstances. Whether the time the negligence has existed is sufficient to make

it effectual is a question to be resolved by the sound discretion of the court." *Withrow v. Walker*, 81 Iowa, 651, 47 N. W. Rep. 893.

In this case plaintiff's debt was in existence prior to 1873. He then had knowledge of the fraud of which he complains, by the record of the deeds. He delayed pressing his claim to judgment for eighteen years without excuse, so far as shown by the record. He has by his delay made it difficult for us to ascertain the truth in regard to the matters at issue. The testimony regarding these transfers, resting almost wholly in the memory of witnesses, is necessarily imperfect and unreliable, and we do not think plaintiff ought to be allowed, at this late day, to come into a court of equity for the enforcement of so stale a demand. There is also another line of authorities in this state which announce the rule that where a party holds a claim or right of action against another he can not be allowed to prolong the operation of the statute of limitations by failing or refusing to take the steps which the law requires in order to authorize the maintenance of the action. See the following: *Baker v. Johnson County*, 33 Iowa, 151; *Prescott v. Gonser*, 34 Iowa, 175; *Hintrager v. Hennessy*, 46 Iowa, 600; *Squier v. Parks*, 56 Iowa, 407, 9 N. W. Rep. 324; *Lower v. Miller*, 66 Iowa, 408, 23 N. W. Rep. 897; *Hintrager v. Traut*, 69 Iowa, 748, 27 N. W. Rep. 807; *Telegraph Co. v. Purdy*, 83 Iowa, 430, 50 N. W. Rep. 45. Should we apply this doctrine to the case at bar, then it is apparent from the facts before stated that the action as to the Clinton county land is barred. Without expressly deciding whether the action is, strictly speaking, barred by the statute or not, we do hold that plaintiff is not in position, by reason of his laches, to enforce his claim against the Clinton county land.

II. With reference to the Calhoun county land, the evidence shows that some time in the year 1891

defendants John and Mary Walraven went on a visit to some friends in that county, and while there learned of some land which was offered for sale. Mary C. Walraven, against the advice of her husband, concluded to purchase it. She borrowed five hundred dollars with which to make the first payment, from a man by the name of Little, and gave her notes and mortgage for the balance. About nine months after the purchase she sold the land at an advance of about four thousand dollars, and purchased the land in that county, now in the name of P. C. Walraven. The greater part, if not all, of the purchase price for this land was paid out of the profits made upon the other tract. This land was afterward sold by Mary C. Walraven to her son William F., and, he failing to make payments therefor as called for by his contract, the purchase was abandoned, and Mary C. Walraven then conveyed the land to P. C. Walraven, in satisfaction of the amount borrowed from him to pay on the Clinton county land. We do not think there was any fraud in this transaction. The purchase price of the land was furnished wholly by Mary C. Walraven, and came either out of the profits of the first land deal in Calhoun county, or from the profits on the Clinton county land. If the purchase price came from the profits made on the first land purchased in Calhoun county by Mrs. Walraven, clearly the transaction is *bona fide;* and if it came from the proceeds of the Clinton county land, then it is equally clear that creditors can not complain. *Bobb v. Woodward,* 50 Mo. 95. Defendant John Walraven had no interest in these lands, and, as he had no claim upon them, it is entirely useless for us to inquire as to the *bona fides* of the sales by Mrs. Walraven to her sons.

III. We are satisfied that the town lots in Wheatland were purchased by defendant Mary C. Walraven with her own money, and that she holds the title there-

to free from any claim of the plaintiff. We can not be expected to set out the testimony on which we base our conclusion, for it would serve no useful purpose. It does not appear to be seriously contended by plaintiff's attorney that there is any evidence of fraud in these transactions, except as it can be inferred from an alleged general conspiracy. What we have said sufficiently indicates our views on this proposition.

IV. Plaintiff has failed to produce sufficient evidence to show that the personal property he seeks to subject to his judgment is held in fraud of his rights. This stock belongs to Mary C. Walraven and her sons and daughters, and is largely the increase of animals purchased with the proceeds of the pasture land in Clinton county. Much of it was purchased by the children of John and Mary C. Walraven from their own earnings, and some of it was given to them by Mrs Walraven, to apply on accounts owing them for work. We have gone very carefully over all the testimony in the case, and reach the conclusion that the decree of the district court should be AFFIRMED.