J. P. STUBBLEFIELD, Appellee, v. PHILLIP GADD AND MARTHA GADD, Appellants.

**Fraudulent Conveyance:** ISSUE AND PROOF. Evidence of the fraudulent character of a bill of sale is admissible in an action to set aside the fraudulent conveyance of property to a wife, in which the defense that the property was sold for the husband's debt, and afterwards conveyed to the wife by the purchaser, is met by the contention that the property included in the bill of sale was used by her to pay for such land.

LAND INCLUDING HOMESTEAD: *Value above encumbrance.* Where a tract of land, including a homestead, is subject to a mortgage and judgments for a sum larger than the value of the portion of the land which is not included in the homestead, a voluntary conveyance by the owner to his wife is not fraudulent.

EVIDENCE TO ESTABLISH RESULTING TRUST. Creditors of a husband cannot establish a resulting trust to land purchased by the wife, on that it was acquired with personal property voluntarily transferred to the wife in fraud of creditors, without showing the amount of the husband's money which was put into the land.

LACHES. Property was fraudulently conveyed by a husband to his wife, but plaintiff, who was a simple creditor, failed to reduce his claim to judgment for twelve years thereafter. The husband renewed the notes which evidenced such indbtedness, but the wife refused to mortgage the land to secure the debt, and paid a mortgage debt on the land with her own money. *Held*, that plaintiff's laches would bar a suit to set aside the fraudulent conveyances, brought fourteen years after the conveyance.

Pleading and Decree: PRAYER. Under Code, section 2775, authorizing the court to grant any relief warranted by the evidence and within the issues, the pleadings in a suit to set aside a fraudulent conveyance from a husband to his wife, to which the wife pleads that the property was sold for the husband's debts and purchased by a third party and conveyed to her, and plaintiff alleges that such later transfer was a mortgage, and was satisfied by the property of the husband, are sufficient to sustain a decree subjecting such lands to the husband's debts, without a prayer for the cancellation of the second deed.

*Appeal from Adams District Court.*—HON. H. M. TOWNER, Judge.

WEDNESDAY, JANUARY 16, 1901.

CREDITORS' bill to subject certain lands, the title to which is in defendant Martha Gadd, to the payment of a judgment held by plaintiff against Phillip Gadd. The trial

court granted the relief prayed, and defendants appeal.—
*Reversed.*

*Dale & Brown* and *W. S. Hefling* for appellants.

*W. O. Mitchell* for appellee.

. DEEMER, J.—The indebtedness on which plaintiff obtained his judgment was created July 8, 1884. Prior to that time, and in the year 1883, Phillip Gadd purchased the land in controversy, consisting of 80 acres in Adams county, Iowa. He, with his family, went into possession of the property, and occupied 40 acres thereof as a homestead. July 17, 1884, Phillip Gadd absconded, and was not heard from, except as hereinafter stated, for about one year. On the day of his departure he made a deed of the real estate to his wife, the deed being executed at a railway station some 15 miles west of Corning, which was sent to her by mail. On the same day a bill of sale of defendants' personal property, dated about one year prior thereto, was filed for record. Just prior to the date on which he absconded Gadd borrowed a considerable amount of money, the exact sum being in dispute. The land conveyed was incumbered by mortgage in the sum of $800, and the conveyance to Mrs. Gadd was subject to this mortgage, which the grantee assumed and agreed to pay. The deed was recorded August 5, 1884. In February of the year 1884, the First National Bank of Corning obtained a judgment against Phillip Gadd for something like $300, and on August 2, 1884, an execution, issued on this judgment, was levied on 40 acres of the land in controversy, and the same was sold, without redemption,—the judgment having been stayed,—to Samuel Mc-Kelvey, one of the sureties on the stay bond. On September 6th a sheriff's deed issued, conveying the land to Mc-Kelvey, and on the same day he entered into a contract with Martha Gadd and James Thomas (her eldest son), whereby

he agreed to reconvey the land to James Thomas for the sum of $330, subject to the mortgage lien thereon. Thomas agreed to pay all taxes on the premises, and Martha Gadd guarantied the performance of the contract by Thomas. Shortly after the making of the contract, Thomas received injuries that rendered him unfit to transact business, and thereafter Joshua S. and Joel V. Gadd (sons of Martha) furnished some of the money agreed to be paid under the McKelvey contract, but the final payments seem to have been made by Thomas. In the year 1886, Thomas assigned the contract to Martha Gadd, and, in the year 1887, McKelvey and wife conveyed the land by special warranty deed to Mrs. Gadd. The note evidencing the indebtedness of Phillip Gadd to the plaintiff was renewed from time to time, and when judgment was rendered bore date October 10, 1889. The judgment thereon was obtained January 16, 1897, and this action was commenced February 1, 1898. The pleadings put in issue the validity of the conveyance from Phillip to Martha Gadd, and the transactions resulting in the deed from McKelvey to her. It is claimed that the first conveyance was without consideration, fraudulent, and void; that the transaction between McKelvey, Thomas, and Mrs. Gadd was a mortgage; and that the consideration therefor was paid by funds derived from the sale of property belonging to Phillip Gadd. The bill of sale from Phillip Gadd to his wife is not questioned in the pleadings, but evidence tending to show it was fraudulent was adduced, for the purpose of showing that the property covered thereby really belonged to Phillip, and that, in so far as any of the proceeds thereof were used to pay McKelvey, the land, to the extent of such proceeds, should be subjected to plaintiff's claim. It should also be stated that Phillip Gadd returned to Adams county, and to a certain extent, at least, resumed the management of the farm, about a year after absconding. The defendant denied the alleged fraud, pleaded the conveyance to Mrs.

Gadd as a bar to plaintiff's claim, the statute of limitations, and laches in instituting his proceedings. On the issues thus joined, the trial court rendered a decree subjecting one 40 to the payment of plaintiff's judgment, finding that one 40 was defendants' homestead, and decreeing that plaintiff's lien was subject to the mortgage on the entire 80 acres.

The first point made by appellant is that the decree is not warranted by the pleadings. We think it is. Defendants in answer pleaded the transaction resulting in the deed from McKelvey to Mrs. Gadd as a bar to plaintiff's action. In reply, the plaintiff says that the entire consideration therefor was furnished by Phillip Gadd; that the contract was, in effect, a mortgage; and that it has been satisfied by the application of the proceeds of Phillip Gadd's property thereon. True, there is no prayer for the cancellation of the deed, but that was unnecessary. Code, section 3775. If the transaction between McKelvey and Mrs. Gadd and Thomas was in effect a mortgage, the deed was nothing more than a release of that mortgage. The defendants' homestead rights were fully protected by the decree, and they have no cause for complaint in this respect. Evidence adduced to show the character of the bill of sale of personal property was objected to, and the objection is relied upon in this court. We think the evidence is admissible, although we are not to be understood as holding that it is sufficient to impeach that instrument. Indeed, we do not find sufficient evidence in the record to justify us in holding it fraudulent.

There is no doubt that the deed of the 80 acres to Mrs. Gadd was without consideration and voluntary, but the evidence shows that the land was incumbered by mortgage in the sum of $800, and that there was also a judgment against Gadd, amounting to about $330, that was a lien on the non-homestead 40 acres. Mrs. Gadd had the right to insist on the mortgagees exhausting the 40 acres

that was not homestead in character before resorting to the homestead. There was therefore more than $1,100 of incumbrances against the 40 acres not homestead in character at the time she took the deed. The evidence shows that the land was not worth this amount when she took the title; and, as the transfer of the homestead to her did not amount to a fraud on creditors, we are constrained to hold that the conveyance, although voluntary, was not fraudulent when made. But it is said that Mrs. Gadd used property belonging to Phillip covered by the bill of sale or conveyances in question in payment of the mortgage existing against the land and the judgment lien thereon, and that she used the proceeds of Phillip Gadd's property in obtaining the conveyance from McKelvey. If that be true, then Phillip Gadd has a resulting trust in the land that may be reached by his creditors. Such a trust is not the ordinary constructive one created by operation of law when a conveyance is shown to be fraudulent as to creditors. The resulting trust may, it is true, be fraudulent as to creditors, when the beneficial interest is concealed for covinous purposes, but the trust is nevertheless a resulting one, and to establish it the creditor must show the exact amount of money belonging to his debtor that was put into the property. This the plaintiff has failed to do, and while there is evidence tending to show that some of the money used by Mrs. Gadd in securing title to the land, and in extinguishing the incumbrances thereon, was derived from the property belonging to her husband, that had not been conveyed to her, the exact amount thereof is not shown; indeed, it is not even approximated.

If it be said that the transaction with McKelvey was nothing more than a mortgage,—a proposition of considerable doubt,—still the evidence shows that nearly the entire consideration therefor was furnished by the adult sons of Mrs. Gadd, or from property that Mrs. Gadd obtained under the bill of sale. There is no such showing as will justify us

in finding a resulting trust in the land in favor of Phillip·
Gadd, that plaintiff may sequester in satisfaction of his judg-
ment. For the reasons stated, the conveyance was not fraudu--
lent so far as it transferred exempt property, and plaintiff'
has not traced with sufficient certainty any money or prop-
erty belonging to Phillip Gadd into the property that was·
not exempt.

II. Let it be conceded for the purpose of the case, how-
ever, that the conveyance to Mrs. Gadd of the land in con--
troversy was in fraud of creditors, still we do not.
think plaintiff is entitled to a decree setting it aside.

The conveyance was made in 1884. When recorded,.
notice was thereby given to all creditors of the character
thereof. *Sims v. Gray,* 93 Iowa, 39; *Nash v. Stevens,* 96·
Iowa, 618, and cases cited. Ordinarily, the statute would
begin to run at that time. But plaintiff had not then re-
duced his claim to judgment, and consequently could not at-
tack the conveyance. Having notice of the fraud, it was his
duty to do so, however, in a reasonable time, and to bring
a creditors' bill to subject the land to the payment of his·
judgment. *Mickel v. Walraven,* 92 Iowa, 423. This he did
not do, but, on the contrary, delayed bringing suit on his
claim for more than 12 years. True, he attempts to excuse
his default by saying that defendant Phillip Gadd promised
from time to time to pay the note, and never refused until.
May, 1896. But it must be remembered that it is defendant
Martha Gadd who is pleading the bar of the statute, not her·
husband. He was not even a necessary party to the suit, and'
could do nothing to prolong the statute, as against his wife,
after he had parted with the title. Plaintiff was not justified
in relying on these promises, unless he intended to waive·
whatever right he had against Mrs. Gadd to subject the land
to the payment of his claim. Although the statute may not,
strictly speaking, bar the claim, plaintiff has been guilty of
such laches that he ought not to be heard to complain of the·

· conveyance. He did not commence this suit until February 1, 1898. The conveyance, as we have observed, was made nearly 14 years before that time. He knew of the fraudulent character thereof, and yet slept on his rights, allowing Mrs. Gadd to make payments of the mortgage indebtedness, extinguish the lien on the land, furnish part, if not all, of the money with which to do it from her own property, or from gifts made to her by her sons, and it would be most inequitable to allow him to come into court at this late day, after the recollection of witnesses has faded, and it is difficult to get at the exact facts, and challenge the conveyance. Mrs. Gadd' did nothing to induce the delay. She was asked at · one time to make a mortgage on the land to secure plaintiff's. claim, but this she flatly refused to do. Had she in any way misled the plaintiff there might be some excuse for his delay. This she did not do, and we think the cause of action, if not barred, is so stale that equity ought not to enforce it. For these reasons the decree of the trial court is reversed, and the cause is remanded for a decree in harmony with this opinion.—Reversed.