BESWICK v. DORRIS et al.

(Circuit Court, N. D. California. December 2, 1909.)

No. 14,687.

1. PLEADING (§ 8*)—CONCLUSIONS—FRAUD.
    A creditor's bill to set aside a conveyance of real estate by the debtor as fraudulent must set out facts tending to establish the alleged fraud, and not merely charge it as a legal conclusion.

    [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 28½; Dec. Dig. § 8;* Fraudulent Conveyances, Cent. Dig. § 773.]

2. FRAUDULENT CONVEYANCES (§ 249*)—RIGHT TO RELIEF—LACHES.
    A creditor's bill to set aside a conveyance made by the judgment debtors nearly eight years before it was filed, which shows that complainant's debt was then due, that judgment was not obtained thereon until nearly five years afterward, and the present suit instituted just within the three years allowed thereafter by the state statute of limitations, is subject to demurrer, on the ground of laches, unless it alleges facts in excuse of the delay.

    [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 735–737; Dec. Dig. § 249.*]

3. FRAUDULENT CONVEYANCES (§ 241*) — ACTIONS — CONDITIONS PRECEDENT — LEVY OF EXECUTION.
    Under the rule that a creditor's suit cannot be maintained by a judgment creditor to subject real estate of the debtor held by a third person on a secret trust for him until an unsuccessful attempt has been made to reach the property by an execution, and Code Civ. Proc. Cal. § 688, which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

makes such property subject to levy, without which no lien attaches to it, the creditor must make such levy before he can maintain his suit in equity.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 720; Dec. Dig. § 241.*]

4. EXECUTORS AND ADMINISTRATORS (§ 431*)—ACTIONS—CONDITIONS PRECEDENT —EXHAUSTION OF LEGAL REMEDY.

Under Code Civ. Proc. Cal. §§ 1589, 1590, providing that where the estate of a decedent is insufficient to pay his debts, and he has in his lifetime conveyed real estate in fraud of his creditors, his executor or administrator shall by order of the court, made on application of the creditor and the giving of security for costs, if required, commence and prosecute any proper action to recover such property, a creditor is required to make such application to the court before he is entitled to himself bring suit to recover the property.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1664; Dec. Dig. § 431.*]

5. FRAUDULENT CONVEYANCES (§ 255*)—ACTIONS—PARTIES—DEFENDANTS.

To a creditor's suit to set aside a conveyance as fraudulent, alleged to have been made by the judgment debtors through a third party as a mere agent or conduit, such judgment debtors are necessary parties.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 748; Dec. Dig. § 255.*]

In Equity. Suit by Richard Beswick against W. J. Dorris and P. S. Dorris. On demurrer to amended bill. Demurrer sustained.

Bourdette & Bacon, Chas. W. Slack, and R. S. Taylor, for complainant.

Dinkelspiel & Schlesinger, James R. Tapscott, and Bert Schlesinger, for defendants.

VAN FLEET, District Judge. The amended bill in this case is defective in certain respects which require that the demurrer thereto be sustained, and its defects may be briefly pointed out.

1. In the first place, the bill is wanting in substantive facts to warrant the interference of a court of equity. It seeks to have set aside a conveyance to the defendants of certain real estate upon the ground that it was made in fraud of the rights of complainant as a creditor of the defendants' grantors. The transaction counted upon is, in substance, as alleged, that Presley A. Dorris and Carlos J. Dorris, the uncles of the defendants, being then indebted to complainant in a large sum evidenced by their promissory note, in June, 1900, entered into an arrangement with one Jerome Churchill, to whom they were likewise indebted, whereby they conveyed to Churchill in a settlement then had with him the property in suit, with other real estate, of which they were the owners, and as a result of which settlement it was agreed that the first-mentioned property should belong to and be the property of Churchill's grantors freed of all claim by Churchill, but with the understanding that instead of said property being reconveyed to them it should be conveyed by Churchill to their nephews, the defendants.

It is alleged:

"That thereupon, and in pursuance of the said agreement, the said Jerome Churchill, on the 29th day of June, A. D. 1900, did convey to the defendants herein the real property hereinafter particularly described, and the defendants ever since have been and now are in possession thereof; that no consideration for the said conveyance passed from the defendants or either of them to the said Jerome Churchill."

And it is alleged: That the said agreement with Churchill, and the conveyances and each of them, made in pursuance thereof, were made and entered into by the parties thereto, and each of them, with the willful purpose and intent to hinder and delay the collection of the sum due complainant on the promissory note mentioned, and to defraud him of all the said sum; that the property so conveyed was and is of the value of $50,000; and that there is no other property owned or possessed by either the estate of Presley A. Dorris (since deceased), or the said Carlos J. Dorris, out of which complainant's judgment, based upon said note, can be satisfied.

These facts constitute the gravamen of complainant's cause of action, and it is at once apparent that they do not afford a sufficient predicate of fraud as against either the defendants or their grantors.

It is true that it is averred that the transaction was had to hinder and delay the complainant in the collection of his note and to defraud him of his debt; but, standing alone, this averment is no more than the conclusion or characterization of the pleader. It must be supported by tangible facts tending to show fraud, and those facts must be fully stated. No such facts are stated. It is alleged that no consideration passed from the defendants to Churchill; but this is obviously immaterial. Under the averments of the bill Churchill had no interest in the transaction as between his grantors and the defendants. The equitable title to the property was in his grantors for whom he held the bald legal title. He was therefore a mere intermediary—a naked trustee to convey that legal title. He had nothing for which the defendants were called upon to pay him a consideration. It might be material that a consideration should have passed from the defendants to their uncles, the original grantors; but as to that the bill is silent, and, in the absence of the fact being negatived, it will be presumed that a full and adequate consideration was paid by defendants to the latter. It is not alleged other than by inference that the defendants had any knowledge of or participation in the original agreement or arrangement between Churchill and his grantors whereby the legal title was passed to the former, or that they had any knowledge of the rights of complainant; and mere implications do not subserve the office of direct averment. Nor is it in any manner alleged that at the time of the transaction with Churchill and the conveyance by the latter his grantors did not have property other than that conveyed amply sufficient to meet the demand of complainant. The only allegation in that regard is that they had not at the time complainant obtained his judgment, and have not now, any other property out of which complainant's judgment can be sat-

isfied. For all that appears therefore, except for the general averment of a fraudulent purpose, the transaction may have been an entirely innocent one and had in the most perfect good faith.

In this respect therefore the bill is wholly insufficient.

2. The bill is also obnoxious to the objection of laches. The alleged fraudulent conveyance was made on June 29, 1900, and, as no concealment is alleged or want of knowledge on the part of complainant, he knew of the fact on that date. It is true that complainant was not in a position to attack the transfer until he had established his demand at law by reducing it to judgment; but his note was at that time long past due, and he did not commence his action thereon until February 28, 1901, and his judgment was not obtained until March 23, 1905. No sufficient facts are alleged to show diligence on the part of complainant in prosecuting his claim to judgment. It is alleged that pending the action one of the defendants, Presley A. Dorris, died, and the necessary steps had to be taken to continue the action against his estate; but this occurred in 1902, and nothing further is alleged to account for the long lapse intervening those steps and bringing the action to a conclusion.

In Donaldson v. Jacobitz, 67 Kan. 244, 72 Pac. 846, an action of very similar purpose and character, it is said:

"With regard to the second point raised by plaintiff in error, that the statute of limitations did not begin to run until the claim was placed in judgment, it is sufficient to say that, while the present action could not have been begun until a judgment had been obtained (Taylor v. Lander, 61 Kan. 588, 60 Pac. 320), the case falls within the rule that one cannot indefinitely postpone the running of the statute of limitations by delay in taking some preliminary action incumbent upon him. Bank v. King, 60 Kan. 733, 57 Pac. 952, and cases cited; Mickel v. Walraven, 92 Iowa, 423, 60 N. W. 633; Stubblefield v. Gadd, 112 Iowa, 681, 84 N. W. 917. As soon as Jacobitz had notice of the fraud (which in legal effect was when the deed was filed for record), or, at all events, as soon thereafter as the then existing note matured, he could have paid the debt and begun action against Donaldson for repayment. Probably the statute would have been suspended between the beginning of the action and the rendition of judgment, provided the action had been diligently prosecuted; but a failure to begin such proceeding for more than two years resulted in a complete bar against the action to set aside the deed."

Moreover, while complainant obtained judgment on his note in March, 1905, the present action was not commenced until February 29, 1908. While this was barely within the period of the statute of the state within which complainant could legally maintain the action, it does not obviate the present objection. It is not sufficient that complainant show merely that he is within his strict legal rights. The very purpose of coming into a court of equity is that those rights are not adequate for his relief. Where it is disclosed that any considerable delay intervened between the ripening of his demand and its assertion, he must allege facts that reasonably account for such delay upon grounds other than that of neglect or acquiescence. The rule applicable to such cases is aptly stated in Kleinclaus v. Dutard, 147 Cal. 245, 249, 250, 81 Pac. 516, where it is said:

"Following the maxim that equity aids the vigilant, and not those who slumber on their rights, it has been universally declared that only conscience, good

faith, and reasonable diligence can call a court of equity into activity, and that, entirely independent of any statutory period of limitations, stale demands will not be aided where the claimant has slept upon his rights for so long a time and under such circumstances as to make it inequitable to enter upon an inquiry as to the validity thereof. Where such is the condition, the demand is, in a court of equity, barred by laches. As has often been said, there is no artificial rule as to the lapse of time or circumstances which will justify the application of the doctrine. * * * It therefore devolves on one seeking the aid of a court of equity, in a case of this character, where the complaint shows great lapse of time without the assertion of any claim, and long-continued acquiescence in acts hostile to the claim, to allege in his complaint the circumstances showing good faith and reasonable diligence on his part. The complaint will be construed most strongly against the pleader, and, if circumstances that might excuse the delay are not alleged, it will be presumed that they do not exist. See: Bell v. Hudson, 73 Cal. 289, 14 Pac. 791, 2 Am. St. Rep. 791; Badger v. Badger, 2 Wall. 87, 95, 17 L. Ed. 836."

While that was a case of an express trust, the principles announced are quite as pertinent here.

3. In this connection I think the bill also fails to show that the complainant has exhausted his remedy at law for the realization of his demand. It is alleged that in July, 1907, a writ of execution was issued on complainant's judgment directed to the marshal of the district, and that on August 9, 1907, "it was duly returned wholly unsatisfied." It is not alleged that the writ was levied on the property involved or any interest therein, and the presumption therefore is that it was not. The equitable title to this property was at that time, and still is, if the theory of the bill be correct, in Presley A. Dorris, or his estate, and Carlos J. Dorris presumptively, nothing appearing to the contrary, in equal undivided interests; the defendants merely holding the legal title thereto in trust for their benefit or that of their creditors. This being so, the interest of Carlos J. Dorris was subject to levy under the statute of this state, which renders all real property of the judgment debtor, or any interest therein, subject to execution (Code Civ. Proc. Cal. § 688); and until such levy the property is not affected by the execution, and no lien attaches.

In Jones v. Green et al., 1 Wall. 330, 17 L. Ed. 553, it is held that a bill in equity will not lie on behalf of judgment creditors to subject real property of their debtor, held by a third party upon a secret trust for him, to the satisfaction of their judgment until a fruitless attempt has been made for its collection by execution at law, and it is said:

"A court of equity exercises its jurisdiction in favor of a judgment creditor only when the remedy afforded him at law is ineffectual to reach the property of the debtor, or the enforcement of the legal remedy is obstructed by some incumbrance upon the debtor's property, or some fraudulent transfer of it. * * * In the second case the equitable relief sought rests upon the fact that the execution has issued and a specific lien has been acquired upon the property of the debtor by its levy, but that the obstruction interposed prevents a sale of the property at a fair valuation. It is to remove the obstruction, and thus enable the creditor to obtain a full price for the property, that the suit is brought."

The averments of the bill do not show a compliance with this requirement.

As to the interest of Presley A. Dorris, or his estate, the complainant's rights were different. That defendant having died pending action on the note, the judgment was made to run against his estate, to be paid "in the due course of administration." As to this interest therefore the complainant could not have execution. The property being in the custody of the probate court, it was not subject to levy or forced sale. Code Civ. Proc. Cal. § 1501. Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867. But complainant was afforded a remedy at law to reach this interest, and the bill fails to disclose that he has exhausted that remedy. Section 1589, Code Civ. Proc. Cal., so far as pertinent here, provides as follows:

"Where there is a deficiency of assets in the hands of an executor or administrator, and when the decedent, in his lifetime, has conveyed any real estate, or any rights or interests therein, with intent to defraud his creditors, * * * the executor or administrator must commence and prosecute to final judgment any proper action for the recovery of the same; and may recover for the benefit of the creditor all such real estate so fraudulently conveyed."

Section 1590 of the same Code provides that the executor or administrator is only bound to bring such action on application of a creditor, "who must pay such part of the costs and expenses of the suit, or give such security to the executor or administrator therefor, as the court, or a judge thereof, shall direct."

Reading these two sections in conjunction, it will be seen that the application to have such an action brought by the representative of the estate must be made to the court, and an order procured directing the suit to be brought; and this is the interpretation which has been put upon those provisions. Mesmer v. Jenkins, 61 Cal. 151; Emmons v. Barton, 109 Cal. 662, 42 Pac. 303. Complainant did not pursue this course. He alleges that:

"Prior to the commencement of this action, your orator demanded of the said Roland D. Dorris, administrator aforesaid of the estate of Presley A. Dorris, deceased, that he commence and prosecute to final judgment a proper action for the recovery of the real property herein mentioned as having been conveyed to the said Jerome Churchill, for the benefit of the creditors of the estate of the said Presley A. Dorris, deceased, and at the time of the said demand offered to pay all of the costs and expenses of the said suit"; but that the administrator "neglected and refused, and still neglects and refuses, to commence or prosecute such an action."

This was not the equivalent of the course required by the statute. Complainant should have made his application to the court, and upon proper representation the administrator could have been required to bring the action. The allegation shows no more than a mere personal demand upon the administrator, and does not disclose that the matter was ever brought to the attention of the court.

Whether the remedy thus afforded by the statute is exclusive of the right of the creditor to sue in any event is left in some doubt by the decisions of the Supreme Court of the state. Hills v. Sherwood, 48 Cal. 386; Ohm v. Superior Court, 85 Cal. 545, 26 Pac. 244, 20 Am. St. Rep. 245; Mesmer v. Jenkins and Emmons v. Barton, supra. And see: Herrlich v. Kaufmann, 99 Cal. 271, 33 Pac. 857, 37 Am. St.

Rep. 50; Freeman on Executions, § 394. But, however this may be, I think that where, as here, the creditor confessedly brings the action in behalf of all the creditors of the estate to cover the property into the hands of the administrator and be disposed of in the regular course of administration, the court having the estate in its keeping should be given the opportunity to say whether the action shall be brought by the representative of that estate before the creditor is at liberty to pursue an alternative remedy.

4. I think, moreover, that, in the circumstances shadowed forth in this bill, if it is to be maintained, not only Carlos J. Dorris, the surviving grantor, but the representative of the estate of Presley A. Dorris, the deceased grantor, are necessary parties defendant. They were the real grantors of defendants, Churchill being a mere instrument, and they have a right to be heard.

For the reasons suggested, the demurrer must be sustained, and it is so ordered.